[No. E034784. Fourth Dist., Div. Two. Dec. 28, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS GREEN, Defendant;
LAWRENCE BUCKLEY, Third Party Claimant and Appellant.

Counsel .

Jerome D. Stark and Robert J. Klein for Third Party Claimant and Appellant.

Michael A. Ramos, District Attorney, Grover D. Merritt and Gregory S. Tavill, Deputy District Attorneys, for Plaintiff and Respondent.

**Opinion**

**RICHLI, J.**—Penal Code section 186.11 (section 186.11) is sometimes known as the "Freeze and Seize Law." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2827 (1995–1996 Reg. Sess.) p. 1.)[1] It defines an "aggravated white collar crime enhancement." When such an enhancement applies, it allows the trial court, before trial, to enjoin the defendant from disposing of assets; it then allows the trial court, after trial, to levy on those assets to pay restitution to victims.

Here, the People seized certain assets of defendant Douglas Green pursuant to a search warrant. Later, however, the People asserted a right to retain the assets pursuant to section 186.11. Meanwhile, Green gave his then-attorney, Lawrence Buckley, a security interest in the same assets for unpaid attorney fees. The most valuable assets, however, were vehicles and cash; as long as these assets were in the hands of the People, Buckley could not perfect his security interest in them. After Green was convicted, the trial court ruled that, under section 186.11, Buckley had priority over the victims only to the extent that he had perfected his security interest.

 Buckley appeals. He contends section 186.11 did not apply because the People never filed a petition and never filed a motion for a preliminary injunction under that section. We agree. Thus, Buckley, who had a valid though unperfected security interest, had priority over the victims, who were mere unsecured creditors. We leave for another day the question of who would have priority if section 186.11 *did* apply.

---

[1] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_2801-2850/ab_2827_cfa_960422_091448_asm_comm.htm> (as of Dec. 10, 2004).

I

## FACTUAL AND PROCEDURAL BACKGROUND

On July 6, 2000, sheriff's deputies executing a search warrant seized items from Douglas Green. These items included those at issue in this appeal: two cars, a motorhome, a boat and boat trailer, a jet ski and jet ski trailer, three all-terrain vehicles, a computer, various computer peripherals, a digital camera, a copier, a fax machine, four two-way radios, and $10,900 in cash. We will refer to these collectively as the property.

For reasons that will become clear, we need to be able to refer separately to those items in which a security interest could not be perfected without possession of the certificate of title. These were the cars, the motorhome, the boat and boat trailer, and the jet ski and jet ski trailer (though probably not the all-terrain vehicles). (Veh. Code, §§ 4000, subd. (a)(1) [motor vehicles and trailers require registration; off-highway motor vehicles require identification but not registration], 6300 ["no security interest in any vehicle registered under this code" is perfected until properly endorsed certificate of ownership showing secured party as legal owner has been deposited], 9850 ["undocumented vessel using the waters or on the waters of this state" must be numbered], 9919 ["[n]o security interest in any vessel numbered under this code" is perfected until properly endorsed certificate of ownership showing secured party as legal owner has been deposited].) We will refer to these collectively as the vehicles.

On August 15, 2000, a complaint was filed charging Green with grand theft, burglary, and forgery. Green retained Attorney Lawrence Buckley to defend him. When Buckley asked for a $25,000 retainer, Green told him "he did not have access to that much money because the Sheriff had taken all of his money and personal property." They therefore agreed that Buckley would have an attorney's lien against the seized property for $25,000.

Buckley represented Green at the preliminary hearing, the arraignment, and two pretrial hearings. Buckley also filed a motion on Green's behalf for the return of any seized items that were not contraband or evidence. The People filed an opposition, arguing that they were entitled to retain any items that *were* either contraband or evidence.

While the motion was pending, the People filed an amended complaint, charging Green with eight counts of forgery, four counts of money laundering, two counts of conspiracy to defraud, and two counts of grand theft and alleging a white collar enhancement in connection with each count. The People then filed a supplemental opposition to the motion which stated,

"Pursuant to Penal [C]ode section 186.11[, subdivision](e)(1), the Court is requested to preserve those items of value siezed [*sic*] pursuant to the search warrant."

On March 1, 2001, the trial court ordered the People to provide a list of the items they intended to retain, indicating whether they were retaining them as contraband, as evidence, or under section 186.11, and to return all other items. On March 23, 2001, the People responded by filing a list entitled "Notice of Property Held Pursuant to Penal Code Section 186.11(e)" (Notice; capitalization omitted). It indicated that they were retaining some items solely as contraband and/or evidence; some (including the vehicles, the all-terrain vehicles, the computer peripherals, and the copier) solely under section 186.11; and some (including the computers, the fax machine, the radios, and the cash) as both. The People returned some items to Green by stipulation. On August 3, 2001, however, at least with respect to the property involved in this appeal, the trial court denied Green's motion for the return of seized items.

Meanwhile, on April 4, 2001, Buckley was allowed to withdraw and new counsel was appointed for Green. However, Buckley continued to represent both Green and his wife in connection with several related matters.

On August 29, 2001, in exchange for legal services in this case and in certain civil cases, Green gave Buckley a promissory note for $80,000. He also signed a written security agreement, purporting to give Buckley a security interest in the property and its proceeds, to secure the note and any other present or future debts.[2] Buckley filed a "Notice of Lien," asserting a lien on the property for $80,000 in attorney fees and costs.

On September 12, 2001, Buckley filed a UCC-1 financing statement listing the property and its proceeds. However, he was unable to perfect his security interest in the cash because the sheriff had possession of it. (See Cal. U. Com. Code, §§ 9312, subd. (b)(3), 9313, subds. (a), (c), (f).) Likewise, he was unable to perfect his security interest in the vehicles because the sheriff had possession of the title documents. (See Cal. U. Com. Code, § 9311, subd. (a)(2)(A); Veh. Code, §§ 6300–6303, 9919–9922.)

On October 11, 2001, following a jury trial, Green was found guilty as charged; all enhancements were found true. On October 25, 2001, Green entered into a plea bargain, pursuant to which the jury verdict was vacated: Green pleaded no contest to two counts of forgery, one count of conspiracy,

---

[2] The security agreement was ambiguous with respect to whether it included the motorhome, the jet ski, or the jet ski trailer. None of the parties, however, has claimed it did not.

and one count of grand theft; he admitted the white collar enhancement with respect to the conspiracy count; and he was sentenced to seven years in prison. The trial court ordered Green to pay restitution to the victims as follows: $95,661.41 to MBNA America (MBNA), $93,330 to Washington Mutual, and $59,800 to Wells Fargo. As part of the plea bargain, Green agreed that the property could be sold and the proceeds could be used for restitution. As the trial court noted at the time, however, Green's agreement was without prejudice to the rights of any lienholders or other third party claimants. At the People's request, the court retained jurisdiction to adjudicate any such claims.

The sheriff's department filed a motion for leave to sell the property at auction. Buckley had no objection to the sale but reserved his right to challenge the disposition of the proceeds. The trial court granted the motion. The net proceeds of the auction were $33,426.95.

The People then filed a motion for a hearing concerning the disposition of the proceeds. They did not file a memorandum of points and authorities, nor did they indicate how they thought the proceeds should be distributed. In response, Buckley filed a declaration in support of his claim. No other written response was filed.[3]

The hearing on the motion was attended by counsel for the People, the sheriff's department, Buckley and Wells Fargo. Green waived his appearance.

Counsel for Buckley argued: "[T]he People never took the proper steps. They didn't follow 186.11. They didn't go in for a restraining order. They didn't get a preliminary injunction." As a result, he argued, the trial court did not have in rem jurisdiction of the property, and Green could convey legal or equitable title to it.

The People argued that, when Buckley filed his "Notice of Lien," he was on notice that the People had already seized the property pursuant to section 186.11.

Counsel for Wells Fargo argued that Buckley's security interest was invalid because he "knew it was stolen property at the time . . . ." She also argued that Wells Fargo had priority, because ". . . Wells Fargo Bank is entitled to restitution and that predates everything" and because Buckley's security interest had not been perfected.

The trial court found insufficient evidence that the property had been purchased with stolen funds: "[L]ogically, you would assume that given the

---

[3] There are some indications that counsel for Wells Fargo submitted a written response at the hearing, but if so, it was never filed.

business that Mr. Green did or the . . . legitimate business he didn't do, . . . most of his income must have come from these . . . illegitimate businesses . . . . But nobody has been in a position to go and trace all of these sources of money from which he secured the Seedoos [*sic*], the boats, the cars, and all that. . . . [¶] And absent being able to do that, nobody is able to conclusively prove that all of these items came from the money that was stolen from the victims in these cases."

The trial court then reasoned as follows: For Buckley to have a right to proceeds under section 186.11, his security interest had to be not only valid, but perfected. Although he did not have a perfected security interest in the vehicles or the cash, he did have a perfected security interest in the other items. The proceeds of those other items totaled $820. However, because the proceeds were insufficient to pay the entire restitution award, the proceeds should be distributed to the victims and to Buckley on a pro rata basis. It therefore awarded $12,804 to MBNA, $12,502 to Washington Mutual, $8,010 to Wells Fargo, and $110.95 to Buckley.

## II

### STATUTORY BACKGROUND

Section 186.11 was originally enacted in 1995. It is intended "to establish a process in which the assets of those alleged to have committed aggravated white collar crime could be frozen at the time of their arrest to secure the assets in order to pay restitution for the crime victims . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 950 (1995–1996 Reg. Sess.) as amended Sept. 7, 1995, p. 4.)[4]

It begins by creating an "aggravated white collar crime enhancement." (§ 186.11, subd. (a)(1).) This enhancement applies to a person who is convicted, in a single criminal proceeding, of two or more felonies: (1) "a material element of which is fraud or embezzlement," (2) that collectively involve the taking of more than $100,000, (3) that were committed against separate victims, or against the same victim on separate occasions, and (4) "that have the same or similar purpose, result, principals, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics, and that are not isolated events." (*Ibid.*)

The bulk of the statute, however, is devoted to creating the following procedure for preserving and levying on the defendant's assets.

---

[4] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/sen/sb_0901-0950/sb_950_cfa_950907_230649_sen_floor.htm> (as of Dec. 10, 2004).

Whenever an aggravated white collar crime enhancement, along with sufficient triggering felonies, have been alleged, "any asset or property that is in the control of th[e defendant] . . . may be preserved by the superior court in order to pay restitution . . . imposed pursuant to this section." (§ 186.11, subd. (e)(1).)

The prosecutor "may . . . file a petition" for "a temporary restraining order, preliminary injunction, the appointment of a receiver, or any other protective relief necessary to preserve the property or assets. This petition shall commence a proceeding that shall be pendent to the criminal proceeding and maintained solely to effect the criminal remedies provided for in this section." (§ 186.11, subd. (e)(2).)

Notice of the petition must be given "to every person who may have an interest in the property specified in the petition. Additionally, the notice shall be published for at least three successive weeks in a newspaper of general circulation in the county where the property affected by an order issued pursuant to this section is located." (§ 186.11, subd. (e)(3).) A temporary restraining order may be issued without notice, if necessary. (§ 186.11, subd. (g)(1).)

After the requisite notice has been given, on motion of the prosecutor, and after "a hearing to determine that an order is necessary to preserve the property pending the outcome of the criminal proceedings" (§ 186.11, subd. (g)(1)), the trial court "may issue[] the following pendente lite orders to preserve the status quo of the property alleged in the petition:

"(1) An injunction to restrain any person from transferring, encumbering, hypothecating, or otherwise disposing of that property.

"(2) Appointment of a receiver to take possession of, care for, manage, and operate the assets and properties so that the property may be maintained and preserved." (§ 186.11, subd. (f).)

"If the prosecution is likely to prevail on the merits and the risk of the dissipation of assets outweighs the potential harm to the defendants and the interested parties, the court shall grant injunctive relief." (§ 186.11, subd. (g)(3).)

"Any person claiming an interest in the protected property may . . . file . . . a verified claim stating the nature and amount of his or her interest in the property or assets." (§ 186.11, subd. (e)(6).) A person who has filed a timely verified claim has "the right to have the court conduct an order to show cause hearing within 10 days of the service of the request for hearing upon the

prosecuting agency, in order to determine whether . . . any existing order should be modified in the interests of justice." (§ 186.11, subd. (g)(2).)

If the defendant is convicted of sufficient triggering felonies, and if an aggravated white collar crime enhancement is admitted or found true, the trial court must "order the defendant to make . . . restitution to the victim . . . ." (§ 186.11, subd. (i)(1)(B); see also *id.*, subds. (d), (e)(7).) It also must determine "what portion, if any, of the property or assets subject to the preliminary injunction . . . shall be levied upon to pay . . . restitution to victims . . . ." (§ 186.11, subd. (i)(1)(A).)

"In all cases where property is to be levied upon pursuant to this section, a receiver appointed by the court shall be empowered to liquidate all property or assets which shall be distributed in the following order of priority:

"(1) To the receiver . . . for all reasonable expenditures made or incurred by him or her . . . .

"(2) To any holder of a valid lien . . . or security interest up to the amount of his or her interest in the property or proceeds.

"(3) To any victim as restitution . . . ." (§ 186.11, subd. (j); see also *id.*, subd. (i)(2).)

"If, after distribution [to any holder of a valid lien or security interest], the value of the property to be levied upon pursuant to this section is insufficient to pay for restitution . . . , the court shall order an equitable sharing of the proceeds of the liquidation of the property . . . ." (§ 186.11, subd. (k).)[5]

### III

### COMPLIANCE WITH SECTION 186.11

Buckley's core contention is that, because the People did not file a petition pursuant to section 186.11, the trial court could not order the proceeds of the property to be distributed as restitution. He argues that the trial court did not have jurisdiction to make such an order. He also argues that, as a result, the order violated due process.

 The People plainly did not file a proper petition. The only kind of petition section 186.11 permits is a petition for "a temporary restraining

---

[5] Under this provision, the trial court erred by awarding Buckley only a pro rata share of the proceeds and thus reducing his award from $820 to $110.95. In light of our disposition, however, this error is moot.

order, preliminary injunction, the appointment of a receiver, or any other protective relief necessary to preserve the property or assets." (§ 186.11, subd. (e)(2).) Because the property had already been seized pursuant to the search warrant, the People felt there was no need to petition for protective relief.

The only property, however, that may be levied on pursuant to section 186.11 is property that is subject to a preliminary injunction. The statute states: "[A]ny asset or property that is in the control of that person . . . may be preserved by the superior court in order to pay restitution . . . imposed pursuant to this section. . . . *[T]his property* may be levied upon by the superior court to pay restitution and fines imposed pursuant to this section . . . ." (§ 186.11, subd. (e)(1), italics added.) Even more specifically, it states "[T]he trial judge . . . shall make a finding . . . as to what portion, if any, of *the property or assets subject to the preliminary injunction. . .* shall be levied upon to pay . . . restitution to victims of the crime." (§ 186.11, subd. (i)(1)(A), italics added.)[6] No petition, no preliminary injunction; no preliminary injunction, no levy.

Buckley has confused matters somewhat by framing this issue in terms of jurisdiction. The People therefore respond that the trial court had personal jurisdiction over Buckley, and that was all the court needed to be able to adjudicate his claim to the property. But the word "jurisdiction" is ambiguous. "In its fundamental sense, 'jurisdiction' refers to a court's power over persons and subject matter. [Citation.] Less fundamentally, 'jurisdiction' refers to a court's authority to act with respect to persons and subject matter within its power. [Citation.]" (*People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) We agree that the trial court had jurisdiction, in the fundamental sense, because it had personal jurisdiction of Green and Buckley. (*People v. Pollard* (2001) 90 Cal.App.4th 483, 490 [109 Cal.Rptr.2d 207].) It did not need to have, in addition, in rem or quasi in rem jurisdiction over the property.[7] (*Neihaus v. Superior Court* (1997) 69 Cal.App.3d 340, 345–346 [137 Cal.Rptr. 905].) Because the People never filed a petition pursuant to section 186.11, however, it lacked jurisdiction, in

---

[6] To be strictly accurate, section 186.11 permits a levy on "the property or assets subject to the preliminary injunction or *temporary restraining order* . . . ." (§ 186.11, subd. (i)(1)(A), italics added.) In practice, however, any temporary restraining order will have been superseded by the grant or denial of a preliminary injunction.

[7] The People do argue that it had in rem or quasi in rem jurisdiction. If there had been a proper petition and a proper preliminary injunction with respect to the property, we would agree (*People v. Pollard, supra,* 90 Cal.App.4th at pp. 489–490), but there was not. Seizure of the property pursuant to the search warrant did not give the trial court in rem or quasi in rem jurisdiction of it for purposes of levy. (*U.S. v. Certain Real Property 566 Hendrickson Blvd., Clawson, Oakland County, Mich.* (6th Cir. 1993) 986 F.2d 990, 994–995; *U.S. v. One 1986 Chevrolet Van* (1st Cir. 1991) 927 F.2d 39, 44–45; *State v. Terry* (1993) 159 Vt. 531, 533–534 [621 A.2d 1285].)

the sense of authority, to order the property levied on, sold, and distributed as restitution.

■ The People argue that their Notice was the equivalent of a proper petition. We analyze this claim under the doctrine of substantial compliance. "Where a reasonable attempt has been made to comply with a statute in good faith, . . . the doctrine of substantial compliance holds that the statute may be deemed satisfied. [Citation.]" (*Davis v. Allstate Ins. Co.* (1989) 217 Cal.App.3d 1229, 1232 [266 Cal.Rptr. 668].) "Substantial compliance means ' "*actual* compliance in respect to the substance essential to every reasonable objective of the statute," as distinguished from "mere technical imperfections of form" ' [citation]." (*People v. Jacobs* (1987) 43 Cal.3d 472, 483 [233 Cal.Rptr. 323, 729 P.2d 757], quoting *Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 [176 Cal.Rptr. 620], original quotation marks corrected.)

Buckley claims the Notice failed to give notice and an opportunity to be heard. If so, it would not substantially comply with the statute. However, it was served on him; thus, he, at least, had notice. He argues that he was unable to file a verified claim to the property, and therefore unable to be heard. The only apparent point, however, of a verified claim is that the claimant gains standing to move to modify or dissolve any existing injunctive order.[8] Here, there was no such order. Buckley was able to be heard when the trial court ordered the property sold and distributed the proceeds.

The question of whether the Notice gave other third parties adequate notice and opportunity to be heard is a closer one. For example, a petition would have had to have been published for three weeks in a newspaper of general circulation; the Notice was not. It could be argued, however, that Buckley lacks standing to complain about a failure to give notice to others. It could also be argued that the notice the sheriff's department eventually gave when it sought leave to sell the property—which was given to all persons with a known possible interest in the property and, moreover, was published for three weeks in a newspaper of general circulation—was an adequate, if belated, substitute. We will not decide this relatively difficult question, because we find we do not have to do so.

The Notice did not substantially comply with section 186.11 for a different reason: It did not result in a preliminary injunction. As already discussed, a

---

[8] It could be argued that a verified claim also is necessary for a lienholder to recover the value of his or her interest from the proceeds of the property. The language of the statute, however, does not lend itself easily to this argument; it says the proceeds must be distributed "[t]o any holder of a valid lien" (§ 186.11, subd. (j)(2)), not "to any holder of a valid lien who has filed a verified claim." In any event, here the trial court recognized that Buckley was entitled to at least some of the proceeds, even though he had not filed a verified claim.

preliminary injunction is a statutory precondition to a levy. In order to issue a preliminary injunction, the trial court must find that "the prosecution is likely to prevail on the merits and the risk of the dissipation of assets outweighs the potential harm to the defendants and the interested parties . . . ." (§ 186.11, subd. (g)(3).) Moreover, the preliminary injunction defines the limits of the assets that may be levied on.

Here, the People took it upon themselves to declare that they were holding the property pursuant to section 186.11. They never bothered to involve the trial court in specifying the assets to be preserved or in finding that the risk of dissipation outweighed the potential harm. They were not entitled to invoke section 186.11 unilaterally. Indeed, this smells almost like a violation of the separation of powers.

■ We also note that, even after a proper petition and motion for a preliminary injunction, section 186.11 does not typically allow the People to seize the defendant's assets. Rather, it allows the trial court to enjoin the defendant against transferring or disposing of his or her assets. (§ 186.11, subd. (f)(1).) Admittedly, it also allows "any other protective relief necessary to preserve the property or assets." (§ 186.11, subd. (e)(2).) Nevertheless, plainly it does not authorize a pretrial seizure at least until the trial court finds that an injunction would be inadequate to protect the victims. It is the "Freeze and Seize Law" because it provides for freezing the defendant's assets before trial, and seizing them only after he or she has been found guilty.

The People argue that section 186.11 is permissive, because it provides that "the prosecuting agency *may* . . . file a petition . . . ." (§ 186.11, subd. (e)(2), italics added.) This statutory language, however, does not tell us the consequences if the prosecuting agency chooses not to do so. As we have already discussed, other statutory language clearly indicates that these consequences include inability to levy on the defendant's property. We agree that the People are never *required* to file a petition, because they are never *required* to preserve the defendant's assets for purposes of restitution.

The People also claim there was no need to file a petition; "there was no danger of dissipation or secreting of the property because the Sheriff's Department was already holding the property." Their reasoning is circular. The sheriff's department was holding at least some of the property (including the vehicles) based *solely* on section 186.11. There was no danger of dissipation only because the People had already exercised self-help.

Finally, at oral argument, the People made much of the fact that Green agreed, in the plea bargain, that the property could be sold and that the proceeds could be used for restitution. Green, however, had already given Buckley a security interest in the property. His agreement was *expressly* without prejudice to Buckley's claim. Moreover, even absent this express limitation, he lacked the power to stipulate away Buckley's security interest. (See Cal. U. Com. Code, §§ 9201, subd. (a) ["[e]xcept as otherwise provided in this code, a security agreement is effective according to its terms between the parties"], 9315, subd. (a),(1) ["[a] security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest"].)

In sum, if the People believed there was a substantial risk of dissipation, they should have filed a proper petition pursuant to section 186.11. The fact that the property was in the possession of the sheriff did not necessarily mean there was no risk of dissipation. Green could still sell the property or give it away, or, as the facts of this case demonstrate, grant a security interest in it. If sufficiently devious, he could even recruit a confederate to bring a collusive action against him, then confess judgment; the confederate could levy on all of the property, even though it was in the sheriff's custody. (See Code Civ. Proc., §§ 700.040, subd. (a) [method of levy on tangible personal property in possession of a third person], 700.050 [method of levy on tangible personal property in custody of levying officer], 700.090 [method of levy on vehicle or vessel is by serving writ of execution and notice of levy on legal owner and junior lienholders].) Moreover, as the facts of this case also demonstrate, Green was likely to need to liquidate the property to pay his legal fees and other expenses.

Section 186.11 does allow the trial court to "consider a defendant's request for the release of a portion of the property affected . . . in order to pay reasonable legal fees in connection with the criminal proceeding, any necessary and appropriate living expenses pending trial and sentencing, and for the purpose of posting bail." (§ 186.11, subd. (g)(4).) In doing so, however, the trial court must "weigh the needs of the public to retain the property against the needs of the defendant to a portion of the property." (*Ibid.*) It also must consider (1) "[t]he public interest in preserving the property," (2) "[t]he difficulty of preserving the property . . . where the underlying alleged crimes involve issues of fraud and moral turpitude," (3) "[t]he fact that the requested relief is being sought by a public prosecutor on behalf of alleged victims of white collar crimes," (4) "[t]he likelihood that substantial public harm has occurred," and (5) "[t]he significant public interest involved in compensating the victims of white collar crime . . . ." (§ 186.11, subd.

(g)(3)(A)–(E), (4).) This minimizes the possibility that the defendant's assets (possibly including assets fraudulently obtained from the victims) will be shunted to the defendant's attorney before they can be used for restitution.[9]

If, on the other hand, the People did not believe there was a substantial risk of dissipation, they should not have invoked section 186.11 at all. They should have returned all of the property that they do not claim was evidence or contraband to Green. They could keep the property that they did claim was evidence or contraband until Green pleaded guilty, but thereafter, absent evidence that it was in fact contraband (i.e., stolen), they should have returned it.

At oral argument, the People shifted their reliance from their Notice to the trial court's order denying Green's motion for the return of seized items. They argued that, by that order, the trial court took custody of the property; thus, even if the order was erroneous, it deprived Green of the power to grant a security interest in the property.

Preliminarily, we note that the People were referring to the order of March 1, 2001, in which the trial court ordered them to provide a list of the items withheld. In that order, however, although the trial court denied Green's motion for the time being, it allowed him to renew his motion after the list was filed. In no way did it rule on the merits of the People's claims. Indeed, in essence, it did not rule on the motion at all.

We recognize, however, that the People could make the same argument based on the trial court's order of August 3, 2001, in which it denied Green's motion for the return of the property on the grounds the People asserted in their Notice. Accordingly, we address the argument on the merits.

■ The People, however, cite no authority for the proposition that the trial court's order prevented Green from granting a valid security interest, nor

---

[9] Section 186.11 gives the People no way to prevent the dissipation of assets before a complaint or indictment has been filed. (§ 186.11, subds. (e)(2), (7), (f), (g)(1).) Here, for example, by July 6, 2000, when the search warrant was executed, Green knew the police were on to him. On August 15, 2000, he retained Buckley and made his first attempt to apply the property to Buckley's legal fees. Yet it was not until February 26, 2001, when the People filed an amended complaint with aggravated white collar crime enhancements, that they were in a position to obtain injunctive relief.

have we found any.[10] Admittedly, a security interest can attach only to the extent that the debtor has rights in the collateral. (Cal. U. Com. Code, § 9203, subd. (b)(2)); *Chartered Bank of London v. Chrysler Corp.* (1981) 115 Cal.App.3d 755, 760 [171 Cal.Rptr. 748]; *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318–319 [128 Cal.Rptr. 345].) However, "[t]he debtor need not have possession in order to pledge the property . . . ." (*Kunkel v. Sprague Nat. Bank* (8th Cir. 1997) 128 F.3d 636, 641.) Even property in the custody of a levying officer can be encumbered. (See Code Civ. Proc., § 697.730, subd. (a).) Here, the trial court's order deprived Green of possession, but he still had title, along with all the other "sticks in the bundle of rights that are commonly characterized as property . . . ." (*Kaiser Aetna v. U.S.* (1979) 444 U.S. 164, 176 [62 L.Ed.2d 332, 100 S.Ct. 383].) Accordingly, he could grant a valid security interest in his rights in the property.

The People may be arguing that the trial court's order determined that they had a right to levy on the property for restitution purposes under section 186.11; hence, any security interest Green might grant was subordinate to this right. The problem with this argument is that, as we have already held, the People had no such right. An erroneous order could not vest them with it. In this appeal, we can reverse that interlocutory order, just as we can reverse the judgment. (Code Civ. Proc., § 906.) Thus, this argument reduces to sheer bootstrapping.

We conclude that the People's Notice did not substantially comply with section 186.11. The trial court therefore had no statutory authority to sell the property or to distribute the proceeds as restitution. We note, however, that Buckley consented to the sale of the property; thus, he waived any error with respect to the sale. He merely reserved his right to challenge the disposition of the proceeds.

Hence, we will now discuss Buckley's right to the proceeds.

IV

THE VALIDITY OF BUCKLEY'S SECURITY INTEREST

Buckley argues that all of the proceeds should have been distributed to him, "pursuant to his valid security interest." The People argue that Buckley's

---

[10] The People have never argued that the Vehicle Code precluded granting—as opposed to perfecting—a security interest in the vehicles. (See Veh. Code, § 5600, subd. (a).) We deem any such contention waived. We note, however, that it has been held that a debtor can grant a security interest in collateral even though the debtor lacks the right to transfer the collateral itself. (*Belke v. M & I First Nat. Bank of Stevens Point* (1994) 189 Wis.2d 385, 390–391 [129 Wis.2d 633, 525 N.W.2d 737], and cases cited.)

claimed security interest was invalid, because (1) the property was the fruit of Green's crimes, (2) Buckley was *"particeps criminis,"* (3) the grant to Buckley was intended to avoid payment of restitution, and hence a fraudulent conveyance.[11] The People also argue that Buckley's security interest was not perfected.

The People's first three contentions are founded on speculation, not evidence. We agree that, *if* the property was stolen or purchased with stolen funds, Green lacked the power to create a valid security interest in it. (See Cal. U. Com. Code, § 9203, subd. (b)(2); *Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1361 [268 Cal.Rptr. 16].) The trial court, however, specifically found insufficient evidence that the property had been purchased with stolen funds. A fortiori, there was insufficient evidence that Buckley *knew* the property had been purchased with stolen funds. The People's assertion that Buckley was *particeps criminis* is simply unfounded. As we have already noted, when Green was charged, he agreed to give Buckley a security interest in exchange for legal services, explaining that he had no other source of funds.[12] There was no evidence whatsoever that the transfer was intended to avoid payment of restitution.

This brings us to the People's contention that Buckley's security interest was not perfected. We discuss this contention solely as to the vehicles and the cash; as to all of the other property, it *was* perfected, by Buckley's UCC-1. Also, Buckley has never argued that, even if his security interest in the vehicles was unperfected, he obtained a perfected security interest in the proceeds of the vehicles when they were auctioned off. (See Cal. U. Com. Code, §§ 9203, subds. (a), (b), (f), 9315, subds. (a), (d)(3).) We deem this contention waived, and we do not consider it. Finally, we need not decide

---

[11] The People even argue that the grant was a crime, citing Penal Code section 155.5. That statute, however, makes it a crime for a felony defendant who has been ordered to pay restitution to transfer property "after the plea or judgment and prior to sentencing . . . , or during the period that a restitution order remains unsatisfied and enforceable" with the intent to lessen his or her ability to pay the restitution. (Pen. Code, § 155.5, subd. (b).) Here, Green gave Buckley the lien and the security interest before he was convicted and, a fortiori, before there was any restitution order.

[12] The People objected to this evidence below, as hearsay and as a violation of the parol evidence rule. Buckley's counsel stipulated that Buckley's claim was not based on an oral security agreement for $25,000; rather, it was based on the later written security agreement for $80,000 (which included the original $25,000). The trial court overruled the objection.

At oral argument (and hence somewhat belatedly), the People argued that we should not consider this evidence. We recognize that the purported oral security agreement was not enforceable. (Cal. U. Com. Code, § 9203, subd. (b)(3)(A).) Nevertheless, the evidence was admissible to show that Buckley acted in good faith. Green's offer of a security interest in exchange for legal services was admissible as an operative fact. Moreover, Green's explanation that he had no other source of funds was not hearsay because, even if it was untrue, Buckley believed it.

whether perfection was required for Buckley to prevail under section 186.11, because that section did not apply.

■ A restitution order is enforceable as a money judgment. (Pen. Code, §§ 1202.4, subd. (i), 1214, subd. (b); *People v. Guardado* (1995) 40 Cal.App.4th 757, 762 [47 Cal.Rptr.2d 81].) Generally speaking, a judgment creditor can obtain an execution lien by levying on personal property of the judgment debtor. (Code Civ. Proc., § 697.710.) Alternatively, with respect to a few specific kinds of personal property, a judgment creditor can obtain a judgment lien by filing a notice of lien with the Secretary of State. (Code Civ. Proc., §§ 697.510, subd. (a), 697.530, subd. (a).) Either type of lien has priority over an unperfected security interest. (Code Civ. Proc., § 697.590, subds. (b), (c) [judgment lien]; Cal. U. Com. Code, §§ 9102, subd. (a)(52), 9317, subd. (a)(2) [execution lien]; see *In re Marriage of Braendle* (1996) 46 Cal.App.4th 1037, 1043 [54 Cal.Rptr.2d 397]; *Raleigh Industries of America, Inc. v. Tassone* (1977) 74 Cal.App.3d 692, 698 [141 Cal.Rptr. 641].)

■ Under the Uniform Commercial Code, upon default, a secured party has the right to immediate possession of the collateral, including proceeds. (Cal. U. Com. Code, § 9607, subd. (a)(2), 9609, subds. (a)(1), (b)(1), (2); *Hartford Financial Corp. v. Burns* (1979) 96 Cal.App.3d 591, 597–600 [158 Cal.Rptr. 169].) ■ A perfected security interest has priority over an unperfected security interest. (Cal. U. Com. Code, § 9322, subd. (a)(2).) An unperfected security interest, however, is not null and void. (*Turbinator, Inc. v. Superior Court* (1995) 33 Cal.App.4th 443, 448 [39 Cal.Rptr.2d 342].) Among other things, it has priority over an unsecured creditor's claim. (Cal. U. Com. Code, § 9201, subd. (a); see *Bank of Stockton v. Diamond Walnut Growers, Inc.* (1988) 199 Cal.App.3d 144, 155 [244 Cal.Rptr. 744].)

As far as we can tell from the record, none of the victims had levied on the property or filed a notice of judgment lien. Accordingly, when the trial court held a hearing to determine the disposition of the proceeds, the victims were still just unsecured creditors. They had no right to any particular property. Buckley, by contrast, had the immediate right to possession of the proceeds of the property, up to the amount he was owed; whatever that was, it exceeded the proceeds.

It follows that the trial court should have awarded all of the proceeds to Buckley.

V

DISPOSITION

It is not too hard to decide what should have happened below. It is far trickier, however, to decide what the appropriate appellate remedy is now.

We have been advised that the proceeds of the auction have not yet been paid over to the victims. Nevertheless, the trial court's order gave the victims a right to the proceeds; reversing the order will undo that right. The victims, however, have not been heard from in this appeal. The People gave notice of their motion concerning the disposition of the proceeds to everybody who could possibly have been interested, including victims MBNA, Washington Mutual, and Wells Fargo. Of these, only Wells Fargo appeared at the hearing. Presumably as a result, Buckley served his notice of appeal on Wells Fargo, but not on MBNA or Washington Mutual. The parties' briefs likewise were served on Wells Fargo, but not on MBNA or Washington Mutual. Wells Fargo has not filed a brief or otherwise appeared in this court.

█ Crime victims have a state constitutional right to restitution. (Cal. Const., art. I, § 28, subd. (b).) Victims are statutorily entitled to notice "of all sentencing proceedings"; they "have the right to appear . . . at the sentencing proceeding and to reasonably express . . . their views concerning the crime, the person responsible, and the need for restitution." (Pen. Code, § 1191.1.) If the trial court makes an order concerning restitution without notice to a victim, the victim, if aggrieved, is entitled to move to vacate the order; if the trial court denies the motion, the victim is entitled to a writ of mandate. (*Melissa J. v. Superior Court* (1987) 190 Cal.App.3d 476, 479 [237 Cal.Rptr. 5].)

█ Nevertheless, "the victim of the crime is not a party" to a criminal action. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451 [279 Cal.Rptr. 834, 807 P.2d 1063].) Significant public policies favor limiting the parties to a criminal action to the People and the defendant. (*Id.* at pp. 450–454.) The restitution statutes seem to contemplate that the People will look after the victims' interests. (See, e.g., Pen. Code, § 1202.4, subd. (h) [prosecutor may request judgment debtor examination for purposes of collecting restitution].) Thus, at least in practice, victims have not been treated as parties to a defendant's appeal. Appellate courts have even reversed direct victim restitution orders without treating the victims as parties. (See, e.g., *People v. Harvest* (2000) 84 Cal.App.4th 641, 652–653 [101 Cal.Rptr.2d 135]; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 994–996 [81 Cal.Rptr.2d 886].)

We do not mean to say that a victim could *never* become a party to an appeal involving a restitution order. We do believe, however, that merely being the passive beneficiary of a restitution order does not suffice. Here, in the trial court, despite having notice of the People's motion, MBNA and Washington Mutual did not bother to respond or to appear. We conclude that we can reach the merits even though the record does not show that they have been given notice and an opportunity to be heard in this appeal.

Accordingly, the order appealed from is reversed, and the trial court is directed to order the net proceeds of the auction distributed to Buckley.

Ramirez, P. J., and Ward, J., concurred.