Filed 4/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| INTEGRATED LENDER SERVICES, INC., | B281135 |
| Plaintiff, | (Los Angeles County Super. Ct. No.  BS161639) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant; | |
| JUAN VELASQUEZ, as Trustee, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael P. Linfield, Judge.  Affirmed.

Nelson & Fulton, Henry Patrick Nelson and Amber A. Logan for Plaintiff and Appellant.

MHM Law Group and Michael Moghtader for Defendants and Respondents.

_____

When a trustee sold at foreclosure property once owned by a convicted fraudster, there were surplus proceeds.  Following statutory procedures (Civ. Code, § 2924j), the trustee deposited the surplus funds with the trial court for determination of the proper distribution.  There were two claims to the funds:  (1) the County of Los Angeles, which had been awarded criminal restitution against the fraudster, and claimed the right to collect the restitution from the property by means of a lis pendens and temporary restraining order recorded in the criminal prosecution; and (2) several trusts, whose interests in the property were both junior to that of the foreclosing trustee and had post-dated the criminal lis pendens.  The trial court concluded that the lis pendens was inadequate to give the County any interest in the property because the criminal court had ordered restitution but had not ordered the property levied upon to satisfy the restitution award.  Therefore, the trial court awarded the surplus proceeds to the trusts.  The County appeals.  Finding no error, we affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

This case involves a piece of property located at 959 N. Vista Street in Los Angeles.  The parties do not dispute the authenticity of any of the recorded documents; their disagreement is the effect to be given those documents.

2

The story begins with Nigisti Tesfai and a charity called the African Community Resource Center (ACRC). Tesfai was the executive director of ACRC. Pursuant to a felony complaint, it was alleged that Tesfai committed numerous acts of fraud through ACRC – specifically by obtaining grants and preferential loans from public agencies but using the funds to line her own pockets rather than for charitable purposes. It is not clear from the record in our case whether ACRC was in pari delicto with Tesfai, or if, instead, it was an innocent pawn, unaware of Tesfai's malfeasance. Ultimately, it does not matter to our resolution of the appeal.

1.  *ACRC Obtains the Property and Conveys a Deed of Trust to the City*

ACRC purchased the Vista Street property by deed recorded September 8, 2000. It planned to operate the property as a domestic violence shelter. That same day, ACRC recorded a deed of trust in favor of the City of Los Angeles, to ensure that the City's interest-free loan of public funds to ACRC was repaid.[1] Additionally, the deed of trust was to guarantee that the project was developed and operated in a manner consistent with the public interest. This is the deed of trust which would ultimately be foreclosed upon, leading to the present lawsuit. Before that would happen, however, Tesfai's crimes would catch up with her.

2.  *Charges are Brought Against Tesfai*

On September 18, 2007, the district attorney filed a 24-count criminal complaint against Tesfai and three other

---

[1]     To avoid confusion, we observe the City, although a prior lienholder, is not a party to this action or this appeal. It is the *County* who seeks the surplus funds.

3

defendants. It alleged several schemes involving the use of ACRC to commit fraudulent acts.

The complaint contained sentence enhancement allegations under Penal Code section 186.11. That section provides an enhanced prison term for "white collar crime" – defined as two or more related felonies, a material element of which is fraud or embezzlement, which pattern of conduct involves the taking of, or results in the loss of, more than $100,000. (Pen. Code, § 186.11, subd. (a).) For our purposes, the statute also provides a means by which property in the hands of the white collar defendant may be "preserved by the superior court in order to pay restitution and fines." (Pen. Code, § 186.11, subd. (d)(1).) Upon conviction, the property "may be levied upon by the superior court to pay restitution and fines" if the facts supporting the white collar enhancement are "admitted or found to be true by the trier of fact." (*Ibid.*) For this reason, Penal Code section 186.11 "is sometimes known as the 'Freeze and Seize Law.' [Citation.]" (*People v. Green* (2004) 125 Cal.App.4th 360, 363 [restitution award of seized property reversed for failure to file a Penal Code section 186.11 petition].)

Briefly, the Freeze and Seize procedure involves the following steps (all subdivisions are within Penal Code section 186.11): (1) the prosecution brings charges which include the white collar enhancement (subd. (d)(2)); (2) the prosecution files a petition to commence a pendent proceeding, in criminal court, "seeking a temporary restraining order, preliminary injunction, the appointment of a receiver, or any other protective relief necessary to preserve the property or assets" (*ibid.*); (3) the prosecutor "shall record" a lis pendens on any real property at issue (subd. (d)(4)); (4) *either* the court issues a temporary

4

restraining order ex parte, pending a noticed hearing (subd. (f)(1)); (5) *or* formal notice is provided to anyone who may have an interest in the property (subd. (d)(3)); (6) the court holds a noticed hearing, weighs several factors identified in the statute, and determines whether to issue the temporary restraining order or preliminary injunction (subd. (f)(3)); (7) if a receiver is appointed, the court may order an interlocutory sale of the property and hold the proceeds (subd. (f)(7)); (8) if the defendant is convicted and *the facts supporting the white collar enhancement are admitted or found to be true by the trier of fact*, the court "shall continue the preliminary injunction or temporary restraining order until the date of the criminal sentencing" (subd. (h)(1)(A)); and (9) at sentencing, the court "shall make a finding" as to "what portion, if any, of the property or assets subject to the preliminary injunction or temporary restraining order shall be levied upon to pay fines and restitution to victims of the crime."  The court "may order the immediate transfer of the property or assets to satisfy any judgment and sentence made pursuant to this section."  (*Ibid.*)

As we will now explain, some, but not all, of these procedures were followed by the prosecution in Tesfai's criminal case.

3.    *A Lis Pendens is Recorded and Temporary Restraining Order Issued*

On September 28, 2007, the prosecutor filed a petition, under Penal Code section 186.11, for a temporary restraining order.  The prosecutor identified and sought to preserve numerous assets and property held in the name of Tesfai, her codefendants, and ACRC.  The Vista Street property was one of the identified properties.

5

That same day, the trial court signed an order doing three things: (1) temporarily restraining the defendants and anyone acting in concert with them from transferring or encumbering the property; (2) requiring the prosecutor to give notice to anyone who may have an interest in the property; and (3) imposing a lis pendens on the property. This order was recorded.

4. *A Second Temporary Restraining Order Is Issued*

On November 21, 2007, the court signed a second order, which was denominated a temporary restraining order, but may have constituted a preliminary injunction.[2] Like the first temporary restraining order, this one prohibited anyone from transferring any interest in, or encumbering, the property. As the orders are virtually identical, we treat them as a single temporary restraining order.

5. *Tesfai is Convicted and Restitution is Ordered*

The operative information against Tesfai ultimately alleged 41 counts, each with a statutory white collar enhancement alleged. In October 2011, Tesfai entered a plea to four of the counts, and was convicted. The record before us contains only the subsequent abstract of judgment; we do not have a minute order or transcript from Tesfai's plea hearing. According to the

---

[2] Whether an order restraining a defendant from an action is a temporary restraining order or a preliminary injunction is determined not by the title of the document, but its effect. (*McManus v. KPAL Broadcasting Corp.* (1960) 182 Cal.App.2d 558, 562; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) ¶ 9:538.2 at p. 9(II)-16.) Regardless of the name of the document, the fact that it was issued two months after the initial temporary restraining order indicates that it may well have followed a noticed hearing.

abstract, Tesfai pled to filing or procuring a false instrument (Pen. Code, § 115, subd. (a)); conspiracy (Pen. Code, § 182, subd. (a)(1)); misuse of public funds (Pen. Code, § 424); and filing a false tax return (Rev. & Tax. Code, § 19705, subd. (a)). The abstract does not indicate that she admitted the white collar enhancement; indeed, the abstract does not reflect that any sentence enhancements were found true. Nor does anything else in the record reflect a true finding on the white collar enhancement.[3]

A restitution hearing was held on July 30, 2012; Tesfai appeared. She was ordered to pay restitution to multiple victims, including the County. The County was awarded a total of $341,404 in restitution. The court made no order addressing whether any of the property subject to the temporary restraining order should be levied to pay Tesfai's restitution obligation.

6.      *One Trust Obtains Its Interest in the Property*

Eighteen months later, on January 15, 2014, at a time when ACRC still owned the property subject to the City's deed of trust, a trust deed was recorded in favor of the Barrington 2005 Trust. This trust deed secured payment of a $12,000 note. The deed of trust was executed by Tesfai on behalf of ACRC.

7.      *The City Commences Foreclosure Proceedings*

At some point ACRC defaulted on the original note secured by the City's 2000 deed of trust, and on July 1, 2014, the City

---

[3]      Tesfai was sentenced to three years, calculated as the middle term of three years for the misuse of public funds, a concurrent middle term of three years for conspiracy, and concurrent terms of two years for the false instrument and false tax return counts. As her preconfinement credits equaled or exceeded the sentence, she was released for time served.

caused the recording of a Notice of Default and Election to Sell. The City claimed ACRC was in default for many reasons, including nonpayment and failing to document that it was operating the property as a domestic violence shelter.

8. *The Trusts Obtain Their Other Interests*

Facing foreclosure, ACRC sold the entire property to the Vista 2014 Trust, identifying Juan Velasquez as the cotrustee of this trust. (Velasquez was also a cotrustee of the Barrington 2005 Trust.) The grant deed in favor of Vista 2014 was signed by Tesfai on behalf of ACRC. The deed was recorded September 19, 2014. The Vista 2014 Trust asserted at trial that it paid approximately $1 million for the property.

Immediately thereafter, the Vista 2014 Trust recorded a deed of trust in favor of Velasquez, personally, securing a $15,000 debt. Velasquez would ultimately assign to the Barrington 2005 Trust any rights he had in this action with respect to this deed of trust. Velasquez has not appeared in this case; the current trustee of both the Barrington 2005 Trust and the Vista 2014 Trust is Camerino Islas. As the interests of the two trusts (Barrington 2005 and Vista 2014) in the three documents (two deeds of trust and a grant deed) are aligned, we consider them together.

9. *The Foreclosure Sale*

The foreclosure on the City's deed of trust proceeded and the property was sold at a trustee's sale. The amount unpaid on ACRC's note to the City was $575,097.91. The property sold to a third party for $850,500.[4] Deducting the amount due the City

---

[4]     The buyer was identified in the Trustee's Deed Upon Sale as "VWH Trust UDT 6-12-15." The Trustee's Deed also states that the "Grantee Herein was the Foreclosing Beneficiary," and

8

and costs left a surplus of $273,157.09. It is this amount that the respective parties claim.

10. *The Trustee Commences This Action*

After the sale, the foreclosing trustee sent notice to everyone with a recorded interest in the property to determine how to distribute the surplus. Having received claims from the trusts on one hand and the County on the other, the trustee deposited the surplus funds with the trial court, seeking a court determination of the proper allocation of the funds.[5]

The case proceeded to a bench trial on written briefs and exhibits. The County argued that it should be awarded the surplus as restitution, given that the lis pendens in the criminal matter predated the trusts' interests. The County took the position that the lis pendens and TRO constituted a seizure of the property "for the purpose of paying victim restitution in the event of Tesfai's conviction." The trusts responded that they were

---

that the amount of the unpaid debt equaled the sale price of $850,500. These two statements appear to be in error. The foreclosing beneficiary was the City, not VWH Trust, and if the amount of the debt were the amount paid, this action to distribute surplus proceeds would not exist.

[5] A notice of related case was filed, identifying a January 2015 action brought by ACRC against the Vista 2014 Trust, among others. It is described as centering "around the issues relating to the foreclosure of a deed of trust, the amount that was actually owing on the loan that foreclosed, and the entitlement to the proceeds of the foreclosure sale." Counsel for the trusts represented that "Both case[s] are based upon the foreclosure of the sa[m]e loan, the same property, and the entitlement to the same foreclosure proceeds." There is no further reference to that case in the record before us.

9

entitled to the proceeds as their deeds of trust and grant deed interests were next in line after the City's deed of trust was foreclosed upon.  They argued that the County had no rights to the property because the criminal court never ordered that the County's restitution be repaid from the property, nor issued a lien against it.

11.    *The Trial Court's Order*

After briefing and oral argument, the trial court awarded the surplus to the trusts.  The court issued a lengthy order explaining that the Freeze and Seize procedure, under which the County claimed the proceeds, had not been followed.  Specifically, the court stated, "there is no showing that the trial judge in the criminal action made a finding that any portion of the subject property was to be levied upon to pay the restitution."

12.    *Judgment and Appeal*

Judgment was entered awarding the surplus to the trusts.[6] The County filed a timely notice appeal.  In designating the record, the County elected to proceed without a reporter's transcript.

## DISCUSSION

1.    *Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo.  [Citation.]  We apply a substantial evidence standard of review to the trial court's findings of fact.  [Citation.]  Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence

---

[6]    The judgment was prepared by counsel for the trusts, who apparently erroneously identified the "Verdugo 2014 Trust" when the "Vista 2014 Trust" was intended.  Nobody noticed the error.

10

in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

2. *The County Had No Interest in the Property as it was Not Seized*

The County indisputably had a restitution order in its favor; Tesfai owed it $341,404. When a defendant is ordered to pay restitution at a noticed hearing, the order to pay restitution is deemed a money judgment, fully enforceable as if it were a civil money judgment. (Pen. Code, § 1214, subd. (b).) The holder of a money judgment may record it to create a judgment lien on real property. (Code Civ. Proc., § 697.310.) There is no suggestion that the County recorded its money judgment against the Vista property.

The County takes the position that the Vista property was nonetheless seized to be used to pay Tesfai's restitution obligation under the Freeze and Seize law. But as the trial court rightly found, the criminal court never actually seized the property.

To be sure, the prosecutor took the first initial steps of filing a petition under Penal Code section 186.11, recording a lis pendens, and obtaining a temporary restraining order. But this simply froze the property pending the criminal proceedings; it did not seize the property to satisfy the restitution order. Further proceedings were necessary once Tesfai was convicted. Specifically, if a defendant's conviction meets the requirements of the white collar enhancement, the court is required to determine how much of the frozen property shall be levied to satisfy the restitution orders. This requires two things, neither of which occurred here: (1) that Tesfai's conviction met the requirements

11

of the white collar enhancement; and (2) the court made a finding that the Vista Property be levied.

As to the first requirement, the statute provides that the defendant's property may be levied to satisfy restitution if the defendant is convicted of white collar felonies and "the existence of facts that would make the person subject to the aggravated white collar crime enhancement . . . have been charged in the accusatory pleading and admitted or found to be true by the trier of fact." (Pen. Code, § 186.11, subd. (d)(1).) Here, it is clear that the white collar enhancement was alleged, but there is no evidence that Tesfai admitted it or that it was found true by any trier of fact. The County has established that Tesfai was charged with numerous crimes to which a while collar enhancement could have attached, and the enhancement was alleged; but the County offered no evidence that she admitted the enhancement or the facts supporting it.[7] At trial, the County relied solely on the abstract which identified the four counts of which Tesfai was convicted. The County argued only, "These crimes meet the definition of 'white collar crimes' defined by Penal Code [section] 186.11." But the abstract shows only conviction of the four

---

[7] The white collar enhancement applies to a pattern of criminal activity, consisting of at least two related felonies involving fraud or embezzlement, causing a loss in excess of $100,000. The Freeze and Seize statute also allows assets to be frozen and levied if, instead of the white collar enhancement having been pleaded and proven, it is pleaded and proven that the defendant caused a loss in excess of $100,000 in a *single* felony, a material element of which is fraud or embezzlement. (Pen. Code, § 186.11, subd. (d)(1).) There is no evidence that Tesfai admitted the facts supporting this allegation, and County does not attempt to rely on this alternative basis.

12

offenses, which do not constitute white collar crimes under the statute unless the crimes constitute a pattern of related felony conduct involving the taking of, or resulting in the loss of, more than $100,000. (Pen. Code, § 186.11, subd. (a)(1).) The abstract shows Tesfai's sentence was not increased for the white collar enhancement, nor did the County submit any evidence suggesting that Tesfai admitted her offenses caused losses exceeding $100,000.

As to the second requirement, even if Tesfai had admitted the enhancement, the court would have been required, at sentencing, to make a finding "as to what portion, if any, of the property or assets subject to the preliminary injunction or temporary restraining order shall be levied upon to pay fines and restitution to victims of the crime." (Pen. Code, § 186.11, subd. (h)(1)(A).) The sentencing court did not do this, which is, of course, consistent with Tesfai not having admitted the enhancement. But if this issue had been before it, the court would have been required to determine, at the very least, whether the Vista Street property, which was in the name of ACRC, should, in fact, be levied upon to pay restitution owed by Tesfai. The court never made this determination, never levied upon the property, and never appointed a receiver to liquidate it.[8]

---

[8] In its brief on appeal, County relies on *People v. Pollard* (2001) 90 Cal.App.4th 483, in which an order that property be sold under Penal Code section 186.11 was held to defeat a quitclaim deed which the defendant had made after a lis pendens had been recorded and preliminary injunction issued. But in that case, the criminal defendant, as part of her no contest plea, admitted the white collar enhancement and the court had actually ordered the property sold. (*Id*. at pp. 487-488.)

3.    *On Their Own, the Lis Pendens and Temporary Restraining Order do not Mandate a Different Result*

The County nonetheless argues that it has an interest in the property superior to that of the trusts because the lis pendens and the temporary restraining order predated the trusts' interests.  We consider each document separately.

A lis pendens does not give the County any rights in the property in and of itself.  "A lis pendens provides constructive notice of the litigation, such that any judgment later obtained in the action relates back to the filing of the lis pendens.  [Citation.]  A lis pendens clouds title until the litigation is resolved or the lis pendens is expunged, and any party acquiring an interest in the property after the action is filed will be bound by the judgment.  [Citation.]"  (*Slintak v. Buckeye Retirement Co., LLC, Ltd.* (2006) 139 Cal.App.4th 575, 586-587.)  In other words, a party obtaining an interest in the property subsequent to the lis pendens takes with constructive notice of the pending action and will be bound by the judgment in that action.  (*Deutsche Bank National Trust Co. v. McGurk* (2012) 206 Cal.App.4th 201, 214.)  Here, the trusts took not only after the lis pendens was recorded, but after the criminal proceeding to which it was connected had been complete.  If the lis pendens gave them notice of anything, it gave them notice of an action which had ended *without* impacting title to the property.  That Tesfai was ordered to pay restitution to the County meant nothing with respect to title, when the court did not order the Vista property levied to satisfy that obligation.

As to the temporary restraining order, it was dated in 2007, Tesfai was sentenced in 2012, and the trusts did not obtain any interest in the property until 2014.  It is certainly questionable whether a *temporary* restraining order – or even a *preliminary*

14

injunction – could have any effect years after the proceedings in which it was entered have been concluded.  But we need not reach the issue.  The temporary restraining order, even if effective, at most restrained Tesfai and ACRC from transferring the Vista property.  It did not give the County any interest in the Vista property.  In other words, even if the temporary restraining order gives rise to a reason to question the validity of the transfers to the trusts, it would not improve County's position, as the County has never been granted any right in the property.

In short, the County argues that some combination of a lis pendens (giving notice that the criminal action may affect the property), a temporary restraining order (prohibiting the criminal defendant from transferring the property), and a restitution order (that the criminal defendant pay money to the victim) add up the property being "seized" for the restitution obligation such that the County has an interest in the property dating back to the lis pendens.  Such cobbling is at odds with the statutory scheme and we do not adopt it.  On the contrary, the criminal defendant did not admit the allegations necessary for a levy and a levy never occurred.  The County never recorded a judgment lien or otherwise attempted to recover its restitution from the property.  It has no interest, and is not entitled to the surplus funds from the trustee's sale.

15

## *DISPOSITION*

The judgment is affirmed.  The trusts shall recover their costs on appeal.


                                    RUBIN, ACTING P. J.

WE CONCUR:



GRIMES, J.



ROGAN, J.*

---

\*     Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.