[No. C034440. Third Dist. July 3, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
DEBORAH LYNNE POLLARD, Defendant;
DAVID A. CLARK, JR., Objector and Appellant.

484

## COUNSEL

Janusz Porembski for Objector and Appellant.

Jan Scully, District Attorney, Jean Williamson, Deputy District Attorney; Robert A. Ryan, Jr., County Counsel, and Alan C. Campbell, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**DAVIS, Acting P. J.**—Appellant David A. Clark, Jr. (Clark), a bail bondsman, appeals from an order that found he had no interest in certain real property obtained by one of his bail bond clients with embezzled funds, and enjoined him from executing or recording any instrument affecting the property.[1]

On appeal, Clark challenges the order on jurisdictional, legal and constitutional grounds. We disagree with these challenges and affirm the order.

### BACKGROUND

Between January and May 1998, Deborah Lynne Pollard (Pollard) embezzled over $786,200 from her employer by setting up a fraudulent vendor account. Pollard used more than $200,000 of these proceeds to buy a $378,000 Sacramento residence (the property), financing the $175,000 remainder.

---

[1]See Penal Code section 186.11, subdivision (e)(2); Code of Civil Procedure section 904.1, subdivision (a)(6), (7), (8). Further undesignated section references are to the Penal Code.

Pollard was arrested on January 12, 1999, and charged with grand theft and an aggravated white collar crime enhancement.[2] The section 186.11 enhancement applies to large-scale frauds or embezzlements; it authorizes the superior court to issue, pursuant to a noticed petition, injunctions or any other protective relief to preserve assets or property in the charged person's control; these assets and property can then be used to pay restitution and fines imposed pursuant to section 186.11.[3]

Pursuant to a section 186.11 petition, the People obtained a temporary restraining order on January 12, 1999, and a preliminary injunction on March 10, 1999, prohibiting Pollard from transferring, disposing of, or encumbering any interest in the property; as required by section 186.11, subdivision (e)(4), the People also recorded a lis pendens on the property on January 12, 1999. The trial court issued the preliminary injunction in the presence of Pollard and her attorney.

On May 18, 1999, Clark met with Deputy District Attorney Jean Williamson (Williamson) concerning a section 1275.1 hold placed on Pollard's release from jail on her $150,000 bail. Section 1275.1, subdivision (b), allows a hold to be placed on a charged person's release if a bail bond's purchase involves feloniously obtained proceeds. At the May 18 meeting, Williamson informed Clark about the lis pendens on the property, and stated that the property had been purchased with stolen money and could not be used as collateral for the bail bond.

After Clark assured Williamson on May 18 that Pollard's stepfather was properly paying for the bail bond (Clark had the stepfather submit a declaration to that effect), the section 1275.1 hold was lifted, the $150,000 bond was posted, and Pollard was released from custody.

On May 20, 1999, Pollard quitclaimed the property to Clark. Clark did not record the quitclaim deed until September 27, 1999.

On May 21, 1999, Clark's company recorded a $150,000 trust deed on the property as collateral for the $150,000 bail bond. Pollard had signed the trust deed on May 20, 1999.

In July 1999, Pollard pleaded no contest to four counts of grand theft and admitted the aggravated white collar crime enhancement allegations.[4]

In August 1999, the superior court ordered the property sold pursuant to section 186.11 and a stipulation between Pollard and the district attorney's

---

[2] Sections 487, subdivision (a), 186.11, subdivision (a)(1) & (2).
[3] Section 186.11, subdivisions (a)(1) & (2), (c), (d)(1) & (2).
[4] Sections 487, subdivision (a), 186.11, subdivision (a)(1) & (2).

office; a $344,000 offer from a disinterested third party was then accepted and escrow was scheduled to close at the end of September 1999. A preliminary title report disclosed the trust deed recorded by Clark's company, and a notice of default by the lender of the $175,000 Pollard had financed. The lender agreed with Williamson that foreclosure was unnecessary in light of the pending sale.

On September 22, 1999, Williamson spoke with Clark regarding the trust deed his company had recorded. Clark refused to file a reconveyance until Pollard's bond premium was paid. The People moved successfully to void the trust deed; Clark was served with a copy of this motion, appeared at the proceeding, and was heard.

On September 24, 1999, while recording the trust deed order, a district attorney investigator discovered that Clark, on September 22, 1999, had recorded a lease agreement on the property between himself and Pollard. The People moved successfully to void this agreement in another proceeding in which Clark received notice, appeared, and was heard.

Only minutes before the lease agreement hearing on September 27, 1999, Clark recorded the quitclaim deed he had obtained from Pollard some four months earlier. This necessitated yet another motion on the People's part, but this time the trial court questioned its own jurisdiction.

These proceedings eventually culminated in another motion by the People (the culmination motion) and an order issued on October 27, 1999. Clark received notice of the motion, filed opposition, and appeared at the hearing with counsel; he argued the merits extensively, and even moved to expunge the People's lis pendens. In the October 27 order, the trial court: determined it had jurisdiction; determined that Clark was not a bona fide purchaser; ratified its prior orders regarding the trust deed and the lease agreement; voided the quitclaim deed and two other belated instruments Clark had tried to slip in (two other trust deeds, executed and recorded in mid-October 1999); directed the sale of the property; denied Clark's motion to expunge the People's lis pendens; and enjoined Clark from executing or recording any instrument affecting the property. This is the order Clark has appealed.

DISCUSSION

1. *Jurisdiction*

■ Clark contends the trial court lacked jurisdiction to hear the People's motions. He is mistaken.

The trial court had *in rem jurisdiction* over the property. An action in rem seeks to affect the interests of all persons in certain property, and applies to the forfeiture of property obtained illegally.[5]

Pollard admitted the section 186.11 aggravated *white collar crime* enhancement allegations against her. Section 186.11, as specified in subdivision (a)(1), applies to "[a]ny person who commits two or more related felonies, a material element of which is fraud or embezzlement, which involve a pattern of related felony conduct, and the pattern of related felony conduct involves the taking" of more than $100,000 (with an increased term if the amount taken exceeds $500,000).[6] Under section 186.11, subdivision (e)(1), "any asset or property that is in the control of that person, and any asset or property that has been transferred by that person to a third party, subsequent to the commission of any criminal act alleged pursuant to subdivision (a), other than in a bona fide purchase . . . may be preserved by the superior court in order to pay restitution and fines imposed pursuant to" section 186.11. The superior court, pursuant to a noticed petition, may grant injunctive relief, appoint a receiver or make any other order necessary to preserve the subject property, may order the sale or transfer of that property, and may determine the validity and nature of any asserted interest in the property.[7]

The People properly invoked this in rem jurisdiction by recording the lis pendens on the property and by providing notice "to every person who may have an interest in the property."[8]

The trial court issued the temporary restraining order on January 12, 1999, and the preliminary injunction on March 10, 1999. The earliest Clark can claim any interest in the property is May 20, 1999, the date of the quitclaim deed from Pollard to Clark; at this point, the trial court had in rem jurisdiction over the property and Clark knew it.

The trial court, moreover, had *quasi in rem jurisdiction* over the property and Clark. When the People contested Clark's adverse claims regarding the property, the proceedings became quasi in rem. A quasi in rem proceeding is not purely in rem, but is brought against someone personally although the real objective is to deal with particular property; a quasi in rem action is often begun by a seizure of property where the court has jurisdiction over

---

[5]See 2 Witkin, California Procedure (4th ed. 1996) Jurisdiction, sections 234, 236, pages 794, 796-797.
[6]Section 186.11, subdivision (a)(1), (2).
[7]Section 186.11, subdivisions (e)(2)-(4), (i)(1)(A), (6).
[8]Section 186.11, subdivision (e)(4), (3).

property claimed by the person.[9] This describes the section 186.11 proceedings here. The voiding of Clark's quitclaim deed, trust deeds and lease agreement was undertaken pursuant to the trial court's section 186.11 power to preserve the property.

Last, but certainly not least, the trial court had *personal jurisdiction* over Clark regarding the People's motions. Clark received notice, appeared at and apparently argued the merits of the trust deed and the lease agreement motions. He received notice, appeared at and argued the merits of the October 1999 culmination motion. In the culmination proceedings, Clark even asked for affirmative relief by requesting that the lis pendens be expunged. These actions established personal jurisdiction.[10]

### 2. *Legal and Substantial Evidence Issues Regarding Voiding of Instruments*

■ The trial court voided the May 20, 1999, quitclaim deed from Pollard to Clark, voided two trust deeds Clark had executed and recorded shortly before the culmination motion was heard in October 1999, and ratified its two September 1999 orders voiding the other trust deed and the lease agreement Clark had recorded.

Preliminarily, Clark claims the proper remedy for invalidating written instruments is *cancellation*, but this claim runs headlong into Civil Code section 3412, which Clark himself cites: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is *void or voidable*, may, upon his application, *be so adjudged*, and ordered to be delivered up or cancelled." (Italics added.)

Clark also claims the evidence is insufficient to cancel (void) the May 20, 1999, quitclaim deed he obtained from Pollard. This claim is not as perplexing as the previous one, but certainly comes with more chutzpah. Properly applying section 186.11, the People obtained a temporary restraining order on January 12, 1999, and a preliminary injunction on March 10, 1999, prohibiting Pollard from transferring, disposing of, or encumbering any interest in the property. Pollard knew of the preliminary injunction from the moment it was issued. The People recorded a section 186.11 lis pendens on the property on January 12, 1999. Substantial evidence shows that Deputy

---

[9]See 2 Witkin, California Procedure, *supra*, Jurisdiction, section 243, page 804; Gifis, Law Dictionary (1975) pages 167-168; *Title etc. Restoration Co. v. Kerrigan* (1906) 150 Cal. 289, 308-310 [88 P. 356].

[10]See 2 Witkin, California Procedure, *supra*, Jurisdiction, section 260, page 828; *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1688-1689 [34 Cal.Rptr.2d 244].

District Attorney Williamson informed Clark on May 18, 1999, that a lis pendens had been recorded for the property, that the property had been purchased with stolen money, and that the property could not be used as collateral for the bail bond. Clark assured Williamson that Pollard's bail bond premium was being purchased with untainted funds.

Notwithstanding these facts, Clark had Pollard quitclaim the property to him on May 20, 1999, and later began a campaign to thwart every move by the People to preserve the property for the payment of restitution and fines under section 186.11. As the trial court recognized, Clark's aim was obvious—to obtain the property "on the cheap."

These facts not only undermine Clark's claim of evidentiary insufficiency regarding the voiding of the quitclaim deed; they also dismantle his claims that it is the People who acted with unclean hands and that he is merely an innocent owner of the property.

### 3. *Taking*

After obtaining the May 20, 1999, quitclaim deed from Pollard, Clark paid about $25,000 in September 1999 to cover what Pollard then owed on the $175,000 purchase loan for the property. Clark claims that when the trial court voided the quitclaim deed and deemed this payment to be a gift, it constituted an improper "taking" of the property without just compensation. Clark is mistaken.

As the trial court properly concluded, Clark did not have any legally recognizable interest in the property—the quitclaim deed was void from the outset; thus, there was nothing to "take" from him. The $25,000 payment for property in which Clark did not have any interest cannot establish an interest for taking purposes. Clark claims this payment precluded foreclosure on the $175,000 loan. The record, however, shows that Deputy District Attorney Williamson informed the lender about the property's pending $344,000 sale under section 186.11, and the lender agreed not to foreclose.

### 4. *Due Process*

Clark claims he was deprived of due process because he was denied adequate notice and an opportunity to be heard. We disagree.

Initially, Clark contends the People failed to comply with the notice requirements of section 186.11, subdivision (e)(3). Under that subdivision, notice of the section 186.11 petition is to be provided "to every person who

may have an interest in the property" sought to be preserved. The People filed their section 186.11 petition in January 1999, long before Pollard quitclaimed the property to Clark on May 20, 1999, and even longer before Clark recorded that quitclaim deed on September 27, 1999. At the time of the section 186.11 petition, Clark did not have any conceivable interest in the property to require section 186.11, subdivision (e)(3) notice to him individually. The trial court found the People complied with the notice requirement of that subdivision, and there is substantial evidence to support that finding.

At oral argument, Clark maintained that he did not receive notice in a general sense regarding the proceedings against the property. But the properly recorded lis pendens under section 186.11, subdivision (e)(4), furnished this notice. Furthermore, Clark was informed on May 18, 1999, of the People's lis pendens and that the property had been purchased with stolen money and could not be used as collateral for the bail bond; nevertheless, he failed to claim an interest in the property within 30 days of this actual notice as required by section 186.11, subdivision (e)(6).

Clark claims he was given "exceedingly unreasonable short notice" of the People's motions in September 1999 concerning the trust deed and the lease agreement. Nevertheless, Clark appeared and argued at both of these proceedings and did not object on this basis. Moreover, the short time frames for these two motions were necessitated by the pending sale of the property (scheduled to close escrow at the end of September 1999), and were prompted by Clark's shenanigans to thwart that sale. True to form, Clark did not record the May 20, 1999, quitclaim deed until just minutes before the scheduled start of the second of these two motions.

As for the motion that really counts, the culmination motion in October 1999, Clark, represented by counsel, filed substantive opposition points and authorities totaling 14 pages, along with accompanying declarations and his own 16-page motion to expunge the lis pendens. The hearing on these motions, at which Clark appeared and argued extensively, covered 68 pages of reporter's transcript.

Clark was not denied due process—he was afforded adequate notice and an opportunity to be heard. He also claims he was denied equal protection, but offers no argument distinct from due process. We therefore reject the claim as waived.[11]

---

[11]See 9 Witkin, California Procedure (4th ed. 1997) Appeal, section 594, pages 627-629.

## DISPOSITION

The order of October 27, 1999, is affirmed.

Nicholson, J., and Callahan, J., concurred.