Filed 10/24/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JAY C. SHAH,<br><br>      Defendant and Appellant;<br><br>CRAIG J. BASSETT et al.,<br><br>      Claimants and Appellants. | A162676<br><br>(San Francisco County<br> Super. Ct. Nos. SCN214619,<br> CT10009193) |

Defendant Jay Shah's appeal attacks the trial court's power to levy property under Penal Code section 186.11, also known as the "Freeze and Seize" law. [1] (*People v. Semaan* (2007) 42 Cal.4th 79, 82 (*Semaan*).) The power is a component of California's "aggravated white collar crime enhancement," and is intended to aid in the enforcement of restitution awards in a subset of white collar criminal cases. (§ 186.11, subd. (a)(1); *Semaan*, at p. 86.) It does so by preventing a defendant from disposing of assets pending trial, and then using those assets to pay restitution to victims if the People secure a conviction.

According to Shah, a trial court must seize any properties under section 186.11 by the time of the sentencing hearing and no later. Any later, Shah

---

[1] Undesignated statutory references are to the Penal Code.

1

contends, and the trial court is divested of all jurisdiction to make orders to seize property under section 186.11. The court made the levying order at issue here eight years after Shah's original sentencing. Shah also argues that this court affirmed his conviction in 2016 and did not properly remand the case, and so the trial court lacked jurisdiction to later levy the property.

We reject both of Shah's arguments. Shah proposes a tortured reading of section 186.11 that seeks to import time limitations into the statute that are not there. Shah's proposed interpretation would place restrictions on the trial court's ability to make orders relating to restitution that ignore the legislative purpose of section 186.11 and California's over-arching statutory framework for restitution in criminal cases. Within that framework, trial courts are empowered to make and enforce restitution orders because California recognizes restitution for victims of crime as a constitutional right. This does not change even after the Courts of Appeal decide a criminal case on the merits. The lack of a disposition formally remanding Shah's original appeal for further proceedings was also no bar to the trial court's levying order. We affirm.

## BACKGROUND

### A. *The Criminal Case*

Shah's current appeal is the latest of several criminal and civil appeals in the aftermath of a jury's September 2012 verdict against him. The charges and Shah's trial were summarized in this court's decision on Shah's appeal challenging his conviction and sentence. (*People v. Shah* (Jul. 8, 2016, A138475) [nonpub. opn.] (*Shah*).)

From September 2008 through March 2010, Shah engaged in fraudulent transactions involving three luxury condominiums owned by victim Shirley Hwang. Shah managed to transfer Hwang's property into the

name of his codefendant and then use the property to obtain over $2 million in loans for himself.

Shah was convicted of multiple offenses, including conspiracy to commit money laundering (§ 182, subd. (a)(1)), identity theft (§ 530.5, subd. (a)), grand theft (§ 487, subd. (a)), money laundering (§ 186.10, subd. (a)), burglary (§ 459), and filing false deeds including deeds of trust (§ 115, subd. (a)). Enhancement allegations including taking a property valued over $3.2 million in the commission or attempted commission of a felony pursuant to former section 12022.6, subdivisions (a)(2) through (a)(4), and special findings, including a pattern of white collar crime pursuant to section 186.11, subdivision (a)(2) were also found true.

## B. *Pre-Conviction Section 186.11 Proceedings*

Early in the criminal case, prosecutors linked Shah to at least four properties: a 106-acre "ranch" in Santa Clara County (the ranch property) and three properties in Los Banos in Merced County (the Los Banos properties). In mid-2010, Shah transferred the ranch property to his parents. In September 2010, the court ordered a temporary restraining order (TRO) barring "the sale, encumbrance, or disposal of the ranch and the Los Banos properties." (§ 186.11, subd. (d)(2) [prosecuting agency may seek TRO to "prevent dissipation or secreting of assets or property"].)

When the court entered the TRO, prosecutors recorded a lis pendens against each of the properties.[2] In October 2010, however, the court ordered a release of the Los Banos properties from lis pendens for the limited purpose of allowing Shah to withdraw up to $96,500 in equity through first or second

---

[2] A lis pendens is a formal notice of a pending action relating to real property that is recorded in the chain of title for the property. (See Code Civ. Proc., § 405.20.)

3

mortgages to pay for "reasonable legal fees in connection with the criminal proceeding, and reasonable and appropriate living expenses." (§ 186.11, subd. (f)(4).)

The court replaced the TRO with a preliminary injunction in November 2010. (§ 186.11, subd. (d)(2) [relief may include TRO, preliminary injunction, or "any other protective relief necessary to preserve the property or assets"].) The preliminary injunction specifically identified Shah, as well as Shah's parents and third party Craig Bassett (Shah's former attorney), as restrained parties. The court ordered that the "preliminary injunction shall remain in effect until further order of the court."

As a condition of its order giving Shah access to equity in his properties to pay living and legal expenses, the court had ordered him to provide the district attorney with "an accounting of his expenditures and funds disbursed." He never did. The court also provided that the People could "re-record notices of lis pendens against the properties upon completion of the financing provided for in this order." They never did.

In May 2011, Shah used third party Denise Wood separate property trust (Wood trust) to refinance a loan to "Megan & Kasi Properties" (which Shah controlled as its principal), in the amount of $92,000 secured by one of the Los Banos properties. In June 2011, Shah also obtained a $92,000 loan from the "Rathkey Trust" secured by one of the Los Banos properties.

C. *Sentencing, Restitution, and Resentencing*

In March 2013, Shah was sentenced to 20 years in state prison and ordered to pay a $14.1 million restitution fine. The parties and the court did not discuss the preliminary injunction at the sentencing hearing.

The People subsequently moved to modify the sentence to include an order for victim restitution pursuant to section 1202.4, subdivision (f). The

4

court held a series of restitution hearings in 2015. On August 20, 2015, the trial court issued an order for Shah to pay $311,767.05 plus interest to Hwang.

In 2016, this court concluded in *Shah* that some of the sentencing enhancements were improperly imposed but affirmed the judgment in all other respects. (*Shah*, *supra*, A138475 [disposition as modified striking two section 12022.6, subdivision (a)(2) enhancements and staying sentence on another].) It stated that Shah's sentence shall be reduced by a total of 24 months.

The trial court re-sentenced Shah at a hearing on February 17, 2017. The court stated that it had jurisdiction and would follow the instructions of the appellate court. It reduced Shah's sentence by 24 months, and ordered the two enhancements stricken and stayed the sentence on the third. It directed the clerk to prepare a new abstract of judgment. No one objected to conducting a resentencing hearing. Nor did anyone mention the preliminary injunction at this hearing.

After Shah's resentencing, the litigants and court focused on the collection of the restitution owed by Shah. At a hearing on August 9, 2017, the prosecution served Shah with Judicial Council CR-115 form seeking information concerning his assets. No one mentioned the preliminary injunction at this hearing (or the next hearing on January 11, 2018).

At a hearing on March 26, 2018, the prosecution asked for modification of the earlier restitution order to account for Hwang's attorney fees incurred trying to enforce the original restitution award and associated legal proceedings. The prosecution mentioned the frozen ranch property and Los Banos properties at that hearing. Again, no one suggested that the trial court needed to void the preliminary injunction or otherwise "unfreeze" the

5

subject properties. During one of several continuances on its request, the prosecution noted: "Restitution has been pending since 2015." On October 29, 2020, the court issued a supplemental restitution order awarding Hwang an additional $704,203.79 plus interest for attorney fees.

## D. *Hwang's Civil Action*

While the criminal case against Shah was proceeding, Hwang filed a civil action against Shah for various tort claims, including conversion, trespass, concealment, and slander of title. The trial court consolidated Hwang's civil action with another case filed against Shah by Commonwealth Land Title Insurance Company (the insurer of loans Shah and his coconspirators had secured with Hwang's properties).

In September 2018, Hwang prevailed in her civil action. She secured a substantial civil judgment—over $3.8 million, including $1.6 million in punitive damages. The judgment was affirmed in the nonpublished opinion *Commonwealth Land Title Insurance Company v. Shah* (Aug. 31, 2021, A156674).

Hwang also prevailed on her postjudgment motion to (1) amend the judgment to add alter ego entities of Shah (including Megan & Kasi Properties) as judgment debtors, and (2) void certain transfers made by the alter ego entities to various transferees of properties that were the subject of the preliminary injunction in Shah's criminal case. The postjudgment order was affirmed in the nonpublished opinion *Hwang v. FedEx Office & Print Servs.* (Nov. 16, 2021, A160429) (*Hwang*).

In *Hwang*, Division Three of this court concluded that voiding the transfers enforced the injunction in the criminal proceedings and was consistent with section 186.11, subdivision (d)(2). (*Hwang, supra*, A160429.) It explained: "By voiding the transfers of the Los Banos properties, the civil

6

court's enforcement of the criminal injunction simply operated to maintain the court-ordered status quo (Shah's possession of the Los Banos properties) and did not in itself establish any rights or remedies belonging to Hwang. Preservation of the frozen properties inured to the benefit of the public, which had a 'significant' interest both in compensating victims of white collar crime and in recovering fines imposed against white collar criminals. (See Pen. Code, § 186.11, subd. (f)(3)(E).)." (*Ibid*.) Division Three also confirmed that the criminal injunction remained in effect, and rejected the argument that the injunction expired back at the time of sentencing by operation of section 186.11, subdivision (h)(1)(A) (section 186.11(h)(1)(A)). (*Hwang*, *supra*, A160429.)

### E. *The 2020–2021 Section 186.11 Proceedings*

In late 2020, against the backdrop of the two then-pending civil appeals, Hwang worked with the San Francisco County District Attorney's Office to initiate further proceedings in the criminal case to levy the properties tied to Shah. Hwang filed a motion, joined by the People,[3] asking to levy the ranch property and Los Banos properties—which they argued remained subject to the court's preliminary injunction—to satisfy restitution pursuant to section 186.11. The motion also asked the court to void the 2010 transfer of the ranch property from Shah to his parents. Meanwhile, Hwang obtained an order from the Merced County Superior Court permitting her to sell the Los Banos properties at a sheriff's sale.

Section 186.11, subdivision (d)(3) sets forth procedures to provide third parties with an opportunity to submit a verified claim of ownership as to seized properties. No one submitted a verified claim as to the Los Banos

---

[3] On a parallel track, the People filed a motion to determine the validity and priority of liens on the four properties.

properties, but Shah's parents and Bassett submitted verified claims for the ranch property. The trial court accepted Bassett's claim (for $41,513.53). It rejected Shah's parent's claim, however, upon determining that Shah had transferred the ranch property to them after committing the crimes alleged in the complaint, so they were not bona fide purchasers for purposes of section 186.11, subdivision (e), which describes procedures for preserving status quo of property.

The hearing on the motion to levy occurred over three days: December 14, 2020, January 13, 2021, and March 17, 2021. The third party claimants argued at length that the trial court lacked jurisdiction to levy the four properties because of the passage of time since the sentencing hearing. They focused on the portion of section 186.11(h)(1)(A) that reads: "If the defendant is convicted . . . the trial judge shall continue the preliminary injunction or [TRO] until the date of the criminal sentencing and shall make a finding at that time as to what portion, if any, of the property or assets subject to the preliminary injunction or temporary restraining order shall be levied upon to pay fines and restitution to victims of the crime." Shah's specially appearing new counsel argued "levying upon property is supposed to be done at the time of sentencing at which Mr. Jay Shah would have been present with counsel." The third parties further objected to the seizure of the Los Banos properties because a lis pendens had not been re-recorded against those properties. They also objected to an order that would unwind a transfer of property that occurred before the entry of the TRO and preliminary injunction.

The trial court articulated "provisional" rulings on January 13, 2021, including a thorough explanation of its reasoning on section 186.11(h)(1)(A). It noted: "I can tell you after two years in this department that a restitution award rarely happens at time of sentencing. And so, it seems odd that the

8

accounting and determination of what is owed to a victim can take place over the course of years, but the determination under [section 186.11](h)(1)(A) of what money will be needed to seize to pay off restitution must happen at time of sentencing or the restitution hearing but not after. That would be an absurd result and we are to avoid absurd results."

The trial court then continued the hearing to allow Shah to appear with new counsel. On March 3, 2021, Shah's new attorney filed a joinder to the third parties' opposition to the motion. Hwang filed supplemental papers on March 8. The hearing concluded on March 17.

## F. *The April 19, 2021 Order*

The trial court issued a written order on April 19, 2021, summarizing its findings and granting much of the relief sought by the People and Hwang. The court observed that, by this time, Shah had been ordered to pay Hwang "in excess of $1.2 million (including interest and the costs of collection)." But "nearly 12 years from the time her ordeal began, the total amount of restitution that Ms. Hwang [had] received [was] $150 that was seized from Shah's prison account."

The trial court found it had jurisdiction to make levying orders under section 186.11, subdivision (h)(1)(C).[4] Citing *People v. Pollard* (2001) 90 Cal.App.4th 483, 489–490 (*Pollard*), the court noted it had personal jurisdiction over Shah and *in rem* jurisdiction over the ranch property. While the lis pendens had not been re-recorded against the Los Banos properties, the trial court decided it either had *in rem* or quasi-*in rem* jurisdiction to

---

[4] Section 186.11, subdivision (h)(1)(C) states: "The sentencing court shall retain jurisdiction to enforce the order to pay additional fines and restitution and, in appropriate cases, may initiate probation violation proceedings or contempt of court proceedings against a defendant who is found to have willfully failed to comply with any lawful order of the court."

9

make orders concerning those properties. The court observed that the "preliminary injunction by its terms 'shall remain in effect until further order of the court,' " and the court never terminated it. The trial court discussed the purposes of section 186.11 at length. After noting that Shah had already filed a notice of appeal, the court then referred back to its reasoning expressed during the January 13 hearing concerning applicability of section 186.11(h)(1)(A).

The court also rejected Shah and the third parties' arguments that it could only levy properties at the time of sentencing. It rejected the third parties' proposed statutory construction and concluded that it retained the authority to levy the properties pursuant to section 186.11. The court also concluded that it had the power to address violations of the preliminary injunction by invalidating improper transactions. These included a lien that Shah's parents had placed on the ranch property in 2013, as well as the transactions involving the Los Banos properties and third parties Rathkey trust and the Wood trust. The court also determined that the transfer of the ranch property to Shah's parents prior to the entry of the preliminary injunction did not bar the court from levying the property.

## G. *The Shah and Third Party Appeals*

Two appeals followed the trial court's April 19, 2021 order. Shah's appeal No. A161990 concerned the attorney's fee component of a supplemental restitution award. We granted a motion to dismiss this appeal as moot based on a settlement reached in Shah's Chapter 7 bankruptcy.

After Shah filed his notice in this appeal, Shah's parents, Bassett, and Rathkey trust also filed notices of appeal as third party claimants. Each of these third party appeals, however, has since been dismissed based on

resolutions obtained in Shah's bankruptcy proceedings. Only Shah's appeal remains pending.

## DISCUSSION

Two arguments remain in Shah's appeal.[5] First, Shah argues that section 186.11 should be construed to bar the trial court from levying a defendant's property or assets at any point after sentencing. Second, Shah argues that the trial court lacked authority to conduct a section 186.11(h)(1)(A) hearing four years after this court "affirmed the judgment and did not remand the case for further proceedings."

We disagree with both arguments. Section 186.11 and its legislative history do not support the statutory construction Shah attempts to advance, particularly in the overall context of California's legislative framework for restitution. Victim restitution is enshrined in the California Constitution, and California law empowers the trial courts to aid in the recovery of victim restitution from defendants convicted of a crime. That power extends until a defendant makes full restitution to his victim(s) and does not end when the appeal on the merits of the underlying criminal conviction is complete. There

---

[5] Shah raised a third argument in his opening brief that the trial court's April 19, 2021 order directed that the frozen properties be levied upon to pay Hwang the $1,015,970.84 in restitution plus interest "*nunc pro tunc*" to August 23, 2015. The People concede that an order *nunc pro tunc* would indeed have been error, but explain that the issue is now moot as a result of Shah's bankruptcy proceedings. Shah admits that the issue is "possibly" moot, but suggests the People have not cited to documents in the record that "conclusively establish[ed]" mootness. Given that Shah appears to all but concede the issue, and provides no legal authority for his position even if not conceded, we decline to address it. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"].)

11

was also nothing about the handling of Shah's original appeal on the merits of his conviction that divested the trial court of its power to make further orders relating to restitution, including under section 186.11.

## I. Standard of Review

Shah presents his argument on section 186.11 as a pure question of statutory construction requiring de novo review. We certainly agree that " '[w]e review questions of statutory construction de novo.' " (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1120.)

Shah, however, appears to assume that a failure to strictly adhere to the procedure outlined in a statute whose construction was disputed necessarily requires automatic reversal. California law dispels that assumption, holding that appellate courts review questions of law (like statutory construction) de novo and the trial court's *application* of the law for abuse of discretion. (E.g., *Pollard*, *supra*, 90 Cal.App.4th at p. 490; *People v. Green* (2004) 125 Cal.App.4th 360, 371 (*Green*) [reviewing language of section 186.11 de novo, but reviewing actions under the doctrine of substantial compliance and explaining statute " 'may be deemed satisfied' " under doctrine by " 'reasonable attempt' " to comply " 'in good faith' "]); *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298 [pertinent question is whether application "is within the range of discretion conferred upon the trial courts under [the statute], read in light of the purposes and policy of the statute"].) Consistent with this framework, restitution orders are reviewed for abuse of discretion. (See *People v. Czirban* (2022) 77 Cal.App.5th 1050, 1063–1064 [direct victim restitution orders and restitution as condition of probation reviewed for abuse of discretion].)

In summary, we review the legal question regarding statutory construction of section 186.11 de novo. But we review the trial court's

application of section 186.11 in the context of restitution for abuse of discretion, which may include evaluating whether a deviation from the procedure described by the statute was harmless under the circumstances.

## II.  Section 186.11 Did Not Bar the Trial Court's April 2021 Order

### A.  *Statutory Construction Principles*

We begin with a brief overview of the California law guiding our statutory construction analysis.  " 'In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment.' " (*Adolph v. Uber Technologies, Inc.*, *supra*, 14 Cal.5th at p. 1120.)  "We look first to 'the words of the statute, which are the most reliable indications of the Legislature's intent.' " (*Ibid.*)  " 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387–388.)  "We decline to insert any additional restrictions into an otherwise unambiguous provision." (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 85.)  We construe the language of the statute "in its full statutory context, keeping in mind the nature and purposes of the statutory scheme as a whole." (*California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1087; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.)

### B.  *Statutory Scheme of Section 186.11*

The "aggravated white collar crime enhancement" of section 186.11 serves three functions:  it creates a sentencing enhancement to charges of fraud or embezzlement, as well as a procedural mechanism to freeze a defendant's assets and following a conviction, seize those assets to pay victim restitution.  (*Semaan*, *supra*, 42 Cal.4th at p. 86.)  We address each function in turn.

1. The Enhancement

Section 186.11, subdivision (a)(1) applies to "[a]ny person who commits two or more related felonies, a material element of which is fraud or embezzlement, which involve a pattern of related felony conduct, and the pattern of related felony conduct involves the taking of, or results in the loss by another person or entity of, more than one hundred thousand dollars ($100,000)." For purposes of the enhancement, a " 'pattern of related felony conduct' means engaging in at least two felonies that have the same or similar purpose, result, principals, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics, and that are not isolated events." (*Ibid.*) The enhancement adds a further consecutive prison term, which varies depending on the amount taken, as well as fines up to "double the value of the taking" in some circumstances. (*Id.*, subds. (a)(1)–(3), (c).) The remedies set out in section 186.11 "are cumulative to each other and to the remedies or penalties available under all other laws of this state." (*Id.*, subd. (k).) A fine imposed under the enhancement is "in lieu of all other fines that may be imposed pursuant to any other provision of law for the crimes for which the defendant has been convicted in the action." (*Ibid.*)

2. Freezing Assets or Property

Section 186.11, subdivision (d)(2) sets out a procedure for a prosecutor to file a petition "to prevent dissipation or secreting of assets or property" by freezing and seizing a defendant's property.

Concurrent with or subsequent to the filing of the petition, the prosecution may move for pendente lite orders, including a TRO or preliminary injunction. (§ 186.11, subd. (e)(1).) The prosecution may seek a TRO ex parte upon a showing of good cause. (*Id.*, subd. (f)(1).) Once the court imposes the TRO or injunction, prosecutors are directed to record a lis

14

pendens against the property pending the outcome of the criminal trial. (*Id.*, subd. (d)(4).)

In anticipation of a preliminary injunction hearing, the People must give notice to all parties with an interest in the property, not just the criminal defendant. (§ 186.11, subds. (d)(3), (f)(1).) "[A]ny interested person may file a verified claim with the superior court stating the nature and amount of their claimed interest" in the assets or properties that are the subject of the prosecutor's petition. (*Ibid.*) They may also request an "order to show cause hearing" and have the hearing conducted within 10 days (or sooner upon a showing of good cause). (*Id.*, subd. (f)(2).)[6]

At the preliminary injunction hearing, the trial court will "determine whether the [TRO] should remain in effect, whether relief should be granted from any lis pendens . . . or whether any existing order should be modified in the interests of justice." (§ 186.11, subd. (f)(2).) In making this determination, the trial court "has the discretion to consider any matter that it deems reliable and appropriate, including hearsay statements, in order to reach a just and equitable decision. The court shall weigh the relative degree of certainty of the outcome on the merits and the consequences to each of the parties of granting the interim relief. If the prosecution is likely to prevail on the merits and the risk of the dissipation of assets outweighs the potential harm to the defendants and the interested parties, the court shall grant injunctive relief. The court shall give significant weight to the following factors: [¶] (A) The public interest in preserving the property or assets pendente lite. [¶] (B) The difficulty of preserving the property or assets pendente lite where the underlying alleged

---

[6] Section 186.11, subdivision (h)(3) also requires the court "to protect the legitimately acquired interests of any innocent third persons" when issuing its final order on disposition of property to fulfill a defendant's responsibility to provide restitution.

15

crimes involve issues of fraud and moral turpitude. [¶] (C) The fact that the requested relief is being sought by a public prosecutor on behalf of alleged victims of white collar crimes. [¶] (D) The likelihood that substantial public harm has occurred where aggravated white collar crime is alleged to have been committed. [¶] (E) The significant public interest involved in compensating the victims of white collar crime and paying court-imposed restitution and fines." (*Id.*, subd. (f)(3)(A)–(E).)

### 3. Postconviction Seizure of Assets or Property

If the defendant is convicted, as in this case, section 186.11 directs the trial court to hold a hearing concerning levying the property to pay restitution (colloquially, the "seizing" in the "freeze and seize" process).[7] The timing of the commencement of the seizure process, and of the ultimate ruling concerning disposition of the four Shah properties to pay restitution to Hwang, are the primary issues raised by Shah here.

The focal point of this appeal, section 186.11(h)(1)(A), begins: "If the defendant is convicted . . . *the trial judge shall continue the preliminary injunction* or [TRO] *until the date of the criminal sentencing and shall make a finding at that time as to what portion, if any, of the property or assets subject to the preliminary injunction or temporary restraining order shall be levied upon* to pay fines and restitution to victims of the crime." (§ 186.11, subd. (h)(1)(A), italics added.)

---

[7] If the defendant is instead acquitted, then the preliminary injunction or TRO "shall be dissolved." (§ 186.11, subd. (g).) If the jury does not reach a unanimous verdict, then "the court shall have the discretion to continue or dissolve all or a portion of the preliminary injunction or [TRO] based upon the interests of justice. However, if the prosecuting agency elects not to retry the case, any preliminary injunction or [TRO] . . . shall be dissolved." (*Ibid.*)

16

The balance of section 186.11, subdivision (h)(1) provides context regarding the court's responsibilities. Subdivision (h)(1)(B) continues: "Additionally, the court shall order the defendant to make full restitution to the victim. The payment of the restitution ordered by the court pursuant to this section shall be made a condition of any probation granted by the court if the existence of facts that would make the defendant subject to the aggravated white collar crime enhancement . . . have been admitted or found to be true by the trier of fact." The accompanying period of probation may "continue for up to 10 years or until full restitution is made to the victim, whichever is earlier." (*Ibid.*) Subdivision (h)(1)(C) of section 186.11 then provides that the sentencing court "shall retain jurisdiction to enforce the order to pay additional fines and restitution," and may punish willful violations of the court's orders via probation violation or contempt proceedings. Section 186.11, subdivision (h)(1)(D) concludes that, during any appeal that has the effect of staying execution of the judgment or other court order concerning restitution under the statute, "the preliminary injunction or temporary restraining order shall be maintained in full force and effect during the pendency of the appellate period."

## C. *Analysis*

As summarized above, Shah's primary argument in this appeal is that section 186.11 should be construed to bar the trial court from levying the ranch property and Los Banos properties eight years after his original sentencing. Based on this proposed interpretation of the statute, Shah contends that the trial court's levying order is void.

### 1. Plain Language of Section 186.11(h)(1)(A)

We begin with the plain language of section 186.11(h)(1)(A). Shah commits laser focus to the provision that the sentencing court "shall" make a

17

finding at the criminal sentencing about what portion of a defendant's frozen assets it will levy to pay the defendant's fines and victim restitution. Shah's argument reads too much into the statute and, in the process, mistakes a procedural rule for a jurisdictional mandate. Simply put, the plain language of section 186.11(h)(1)(A) does not say that prosecutors lose the ability to ask—or that the trial court loses its discretion—to levy a frozen property by failing to undertake the process by the end of the sentencing hearing.

Shah does identify a procedural misstep regarding the "freeze and seize" process in this case. Pursuant to section 186.11(h)(1)(A), a levying order should have been on the agenda at the September 2013 sentencing. It was not, and it appears no one brought it to the trial court's attention. Nor was any issue regarding the levying order (or section 186.11 or the preliminary injunction) raised in *Shah* when Shah presented other arguments on sentencing.

The trial court instead held a restitution hearing on August 20, 2015. After the *Shah* decision, the trial court held a hearing on remand to adjust Shah's sentence as instructed by this court. No one mentioned the preliminary injunction. Meanwhile, Hwang was pursuing restitution in her parallel civil action. The People then moved forward with restitution proceedings in the criminal case following the remittitur from *Shah*. Those efforts culminated in the trial court's April 19, 2021 order now before us. It is this order, in which the trial court found it was still permissible for it to make a levying order, despite the apparent earlier error in failing to issue a levying order at the sentencing hearing, that we now review for abuse of discretion. (*Pollard*, *supra*, 90 Cal.App.4th at p. 490; *Green*, *supra*, 125 Cal.App.4th at p. 371.)

18

Despite Shah's steadfast argument to the contrary, use of the word "shall" in section 186.11(h)(1)(A) is not especially helpful in connection with the *timing* of the hearing. Nothing in the plain language of the provision suggests that the timing of the postconviction levying order is a jurisdictional mandate. Nor does it contemplate the expiration of the preliminary injunction or TRO at the conclusion of the sentencing hearing.[8] Such alternative language would do what Shah argues the statute does, which is make it impossible to levy property after sentencing. The reality, however, is that the statute is silent concerning what might happen if any frozen properties are not levied by the end of the sentencing hearing. We decline Shah's suggestion to rewrite it.

2. The *Integrated Lender* and *Green* Decisions

In urging his restrictive construction of section 186.11(h)(1)(A), Shah relies heavily on *Integrated Lender Services, Inc. v. County of Los Angeles* (2018) 22 Cal.App.5th 867 (*Integrated Lender*). We agree with the trial court that *Integrated Lender* is not instructive here. In that case, the defendant had entered a plea but did not admit the aggravated white-collar fraud enhancement. (*Id.* at p. 906.) Unsurprisingly, without an admission of guilt or conviction under the enhancement, section 186.11 could not be used to

---

[8] Indeed, the *Hwang* decision confirmed that the criminal injunction relating to the ranch property and Los Banos properties remained in effect after Shah's sentencing in 2013 and at least through the date of that appeal. (*Hwang, supra*, A160429.) Citations to unpublished California appellate opinions are permitted when the unpublished decision "is relevant under the doctrines of law of the case, res judicata, or collateral estoppel," as was true here. (Cal. Rules of Court, rule 8.1115(b)(1).) Shah was a party to the *Hwang* case, but none of the parties cite (let alone discuss) the decision in their briefing on this appeal. We therefore have no occasion to address whether collateral estoppel ought to bar re-litigation of the issue in connection with this appeal.

seize the subject property. (*Integrated Lender*, at pp. 875–876.) *Integrated Lender* made clear that even with an admission or conviction, the victim does not obtain a property interest based on some combination of a lis pendens, TRO, preliminary injunction, or restitution order under section 186.11. The victim must obtain a levying order under section 186.11(h)(1)(A). (*Integrated Lender*, at p. 875.) But nothing in *Integrated Lender* suggests that the trial court must vacate a preliminary injunction under section 186.11 if the property had not been levied at the time of the sentencing hearing or that the court is barred from making a levying order after that hearing.[9]

Nor have the parties presented any other authority that supports Shah's proposed reading of section 186.11(h)(1)(A). In *Green*, for example, prosecutors never obtained a preliminary injunction while a criminal case was pending, believing that an executed search warrant was sufficient to secure the assets at issue. (*Green*, *supra*, 125 Cal.App.4th at p. 365.) The appellate court concluded that failure to obtain a TRO or preliminary injunction to freeze the assets under section 186.11 barred the trial court from later exercising the authority to seize those assets using the procedures set out in the statute. (*Green*, at p. 370.) It expressed: "No petition, no preliminary injunction; no

---

[9] We note that, in dicta, the court in *Integrated Lender* referenced potential difficulties in enforcement of a TRO or preliminary injunction "years after the proceedings in which it was entered have been concluded," but then declined to "reach the issue." (*Integrated Lender*, *supra*, 22 Cal.App.5th at p. 877.) We have no reason to question the trial court's determination here that the preliminary injunction remained in effect as of April 19, 2021 (the date of the levying order). (See Code Civ. Proc., § 533 ["In any action, the court may on notice modify or dissolve an injunction or [TRO] upon a showing that there has been a material change in the facts upon which the injunction or [TRO] was granted, that the law upon which the injunction or [TRO] was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or [TRO]"].)

preliminary injunction, no levy." (*Ibid.*) Here, unlike *Green*, the trial court issued a preliminary injunction and otherwise complied with the requirements of section 186.11 through Shah's conviction. Its only arguable misstep was in not making a levying order at the sentencing hearing, but instead waiting until postconviction restitution proceedings had commenced.

### 3. Statutory Context and Purpose

Our interpretation of section 186.11(h)(1)(A) is supported by the context of the statute as a whole. The statute is explicit that the "freeze and seize" procedure is intended "[t]o prevent dissipation or secreting of assets or property." (§ 186.11, subd. (d)(2).) The court's duty to "order the defendant to make full restitution to the victim" is *mandatory*. (*Id.*, subd. (h)(1)(B).) In deciding whether to issue a TRO or preliminary injunction, the court is required to give "significant weight" to factors related to the protection of the public interest and the victims of white collar crime. (*Id.*, subd. (f)(3)(A)–(E).) It is also required to "seek to protect the interests of any innocent third persons." (*Id.*, subd. (f)(5).)

More importantly, the statute expressly contemplates postsentencing proceedings by providing that the trial court "shall retain jurisdiction to enforce the order to pay additional fines and restitution." (§ 186.11, subd. (h)(1)(C).) And notwithstanding provisions that limit the duration of probation conditions (like the two-year limit on felony probation set out in section 1203.1, subdivision (a)), the court may impose probation for "up to 10 years or until full restitution is made to the victim." (§ 186.11 subd. (h)(1)(B).)

Our conclusion that section 186.11 does not bar a court from issuing a levying order after sentencing finds further support in the legislative history of the statute. In 1995, the Legislature enacted Senate Bill No. 950 to "establish[] a procedure for the freezing and levying upon the financial assets

21

of persons alleged to have committed aggravated white collar crime in order to obtain restitution for the crime victims . . . ." (Sen. Com. on Crim. Proc., Analysis of Senate Bill No. 950 (1995–1996) Reg. Sess.) as amended Apr. 17, 1995, p. 3 (Senate Committee Analysis).) The office of the bill's author felt "that a major point of frustration for prosecutors occurs when persons convicted of major fraud crimes are allowed to enjoy the benefits of their crimes, even after serving a term of incarceration. The author feels that it is very difficult to say that justice has truly been done when a person is sentenced to a few years in state prison but still retains millions of dollars in assets which should rightfully go to the victims of crime." (*Id.*, at p. 5.)

The author of the bill argued that, under then-existing law, "it is very difficult for a prosecutor to freeze the assets of a criminal defendant pending a criminal conviction. As a result, by the time such a defendant is convicted, all assets have been dissipated, hidden, or transferred out of the jurisdiction of the court. The result is that major fraud defendants are sentenced to serve state prison sentences without losing the proceeds of their crimes. Criminals retain the stolen money and can enjoy a lavish life-style after release from custody at the expense of their victims. [¶] The victims of crime . . . are manipulated by sophisticated criminals. Public prosecutors do not have the tools necessary to get restitution for these victims whose lives, retirement or careers could be in a state of ruin." (Sen. Com. Analysis, *supra*, at pp. 5–6.) In short, the key point of the "freeze and seize" law was to "freeze the assets of those alleged to have committed white collar crime at the time of their arrest. This will assure restitution is paid to victims if the defendant is convicted."[10] (*Id.* at p. 6.)

---

[10] The Legislature amended section 186.11 to lower the monetary threshold to $100,000 because it viewed the previous $500,000 level as

The legislative history does not reflect any importance being placed on the timing of a levying order with the sentencing hearing, or any limitation on the trial court's jurisdiction to make a levying order only at the sentencing hearing. Committee records say only what legislators believed would happen if a defendant is convicted under the white collar criminal enhancement. "[T]he preliminary injunction or [TRO] would be continued until the date of the criminal sentencing. At the criminal sentencing, the trial judge would make a finding as to what portion, if any, of the assets subject to the preliminary injunction or [TRO] would be levied upon to pay fines, restitution to victims of crime, and the reasonable costs of the investigation and prosecution of the defendant. [¶] The order . . . could exceed the total amount that was subject to the preliminary injunction . . . and would be converted into an enforceable civil judgment by the criminal court. [¶] The court would order that any person convicted of aggravated white collar crime to make full restitution to the victim or to make restitution to the victim based on his or her ability to pay." (Sen. Comm. Analysis, *supra*, at pp. 12–13.)

Shah argues that there are "sage policy reasons" why the Legislature "required that the trial court make [its] findings" concerning postconviction levying of property at the time of sentencing "rather than going on ad infinitum." Shah specifically identifies the cloud over title to a property caused by a lis pendens subject to a preliminary injunction, and the concern that an injunction lasting past the sentencing hearing could lead to "neglected property" and failure to pay property taxes. These rationales amount to speculation and find no purchase in the legislative history.

---

"exempt[ing] too many fraud cases to be truly effective." (Assem. Com. on Public Safety, Analysis of Assembly Bill No. 2827 (1995–1996 Reg. Sess.) Apr. 23, 1996.)

In summary, the legislative history of section 186.11 provides no support for construction of the statute that would impose the sentencing hearing as the absolute jurisdictional deadline for the trial court to issue a levying order. The Legislature was explicit that it added section 186.11 to fill a gap in California's framework for victim restitution in white collar criminal cases, making it more difficult for someone convicted of an aggravated white collar crime to nevertheless benefit from their ill-gotten gains. Shah's reading of the statute would contravene the stated purpose of the law by limiting a court's ability to aid in recovery of restitution.

4. Broader Legislative Framework Regarding Victim Restitution

Our conclusion that the trial court was not barred from issuing a levying order after the sentencing hearing is also supported by California's broader legislative framework for restitution. California elevates victim restitution to a constitutional right. Article I, section 28 of the California Constitution, also known as the "Victims' Bill of Rights," provides: "In order to preserve and protect a victim's rights to justice and due process, a victim shall be entitled to the following rights. [¶] . . . [¶] (13) To restitution. [¶] (A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] (B) Restitution shall be ordered from the convicted persons wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss. [¶] (C) All monetary payments, monies, and property collected from any person who has been ordered to make restitution shall be first applied to pay the amounts ordered as restitution to the victim." (Cal. Const. art. I, § 28(b)(13)(A)–(C).)

Statutes like section 1202.4 implement this constitutional mandate. Section 1202.4, subdivision (a)(1) explains, "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." Accordingly, the court "shall order the defendant to pay both" a "restitution fine" and "restitution to the victim or victims," which is "enforceable as if the order were a civil judgment." (*Id.*, subd. (a)(3).)

Flexibility in the use of tools available to the People and to the courts is central to California's view of restitution. As the trial court recognized, "[R]estitution is a critical part of the criminal proceeding, and the court retains continuing jurisdiction to modify an order for victim restitution." (§§ 1202.42, subd. (d), 1202.46; *People v. Dehle* (2008) 166 Cal.App.4th 1380, 1390; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1207.) The key is to provide "full restitution" to victims of crime, regardless of the timing. (§ 1202.4, subd. (f).) "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution." (*Ibid.*)

Section 1202.46 further gives the court *ongoing* power to make orders relating to restitution, and explicitly avoids setting a deadline for a court to make an order concerning restitution. With certain exceptions not relevant here, section 1202.46 provides that "when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined. This section does not prohibit a victim, the district attorney, or a court on its own motion from requesting

25

correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine pursuant to Section 1202.4."

Section 186.11 operates in this greater constitutional and legislative framework. It, "like other provisions of the Penal Code (e.g., § 1202.4 et seq.)," implements the California Constitution's mandate concerning restitution for victims of crime. (*Semaan*, *supra*, 42 Cal.4th at p. 86.) Under California's other restitution laws, "there is no limitation upon when the court must next set a restitution hearing, nor is there a limitation on the permissible reasons that may prevent fixing the amount of restitution." (*People v. Bufford* (2007) 146 Cal.App.4th 966, 971.) Given this context, and the central importance of restitution to California's system of justice, we cannot accept Shah's position that the sentencing hearing is the outside deadline for a levying order as a matter of law based on the statute as written.[11] (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at pp. 1386–1387.)

Shah attempts to minimize the value of California's legislative framework regarding victim restitution in our analysis here by arguing that

---

[11] Shah suggests that the timing of the restitution order in August 2015 "begs the question why restitution was not set earlier such as at the time of sentencing." He is wrong. The timing of the trial court's first restitution order was entirely consistent with section 1202.4. As the trial court noted in its April 19, 2021 order, California's legislative framework for restitution means "the court can award losses to the victim and modify that award should other losses accrue or be discovered. That is what happened in this case and what happens in many cases. It is the experience of this court that the determination and imposition of restitution rarely happens at [the] time of sentencing. It thus seems wrong that the accounting and determination of what is owed to a victim can take place over the course of years, [citation], but the determination under subdivision (h)(1)(A) of what money will be needed to seize to pay restitution must happen at time of sentencing and never after."

"[t]here are countervailing public policy considerations applicable to section 186.11 [that] do not apply to general awards of restitution." He attempts to distinguish sections 1202.4 and 1202.46 by contending they illustrate that the Legislature is capable of providing for continuing jurisdiction over matters related to restitution when it determines that to be appropriate. He also argues that the court can still order restitution even if it cannot levy the subject properties.

We are not persuaded. As described above, section 186.11, subdivisions (h)(1)(C) and (h)(1)(D) explicitly reserve the trial court's "jurisdiction to enforce the order to pay additional fines and restitution" and mandate that the preliminary injunction remain in place during an appeal on the merits. (See also *Pollard*, *supra*, 90 Cal.App.4th at pp. 488–490.) Had the Legislature wished to impose such a jurisdictional bar to the trial court's ability to make restitution orders that would satisfy article I, section 28 of the California Constitution, not to mention Penal Code sections 1202.4 and 1202.46, it could have done so in the statutory language and the legislative history would reflect such efforts. It does not. As for Shah's argument that the court's inability to ever make a levying order after a sentencing hearing would not deny Hwang her right to restitution, his approach would still short-circuit the purpose of section 186.11: to ease the process by preventing assets from being hidden, and then using those assets to actually pay restitution rather than to make hollow orders that are extremely difficult and time consuming to enforce.

In its well-reasoned April 19, 2021 order, the trial court properly concluded that it remained empowered to make a levying order seizing and disposing of the ranch property and Los Banos properties that remained subject to the preliminary injunction. We agree with its determination that

27

"the better and fairer interpretation is that Ms. Hwang is entitled to have this court now make a finding as to 'what portion, if any, of the property or assets subject to the preliminary injunction . . . shall be levied upon to pay fines and restitution to victims of the crime.' " Doing so would uphold Hwang's constitutional rights while avoiding a situation in which Shah would "achieve a windfall due to the failure of the court" to act. Such a result is exactly what section 186.11 and its legislative history contemplates.

Again, Shah advances an all-or-nothing jurisdictional argument. He offers no alternative argument that the levying order was error in excess of the trial court's jurisdiction (instead of void), or that any such error was more than harmless. To the extent that the trial court should have made its findings concerning levying at the sentencing hearing, it was not raised in the original *Shah* appeal, and we are hard-pressed to identify any potential harm that would rise to the level of reversable error.

## II. The Remittitur from Shah's Direct Appeal from His Conviction Did Not Bar the Trial Court's April 2021 Order

Shah argues that, in *Shah*, *supra*, A138475, this court "did not remand the cause for further proceedings necessary to carry out the judgment." According to him, the lack of a formal remand meant the trial court lacked any power "to make findings regarding frozen property when it failed to do so at sentencing when it had jurisdiction to take such action."

Shah is wrong. First, as noted above, section 186.11 provides that the trial court's preliminary injunction "shall be maintained in full force and effect during the pendency of the appellate period." (§ 186.11, subd. (h)(1)(D).) Section 186.11 thus anticipates hearings regarding restitution derived from properties frozen by a preliminary injunction under the statute. Second, contrary to Shah's recollection, the trial court did in fact conduct resentencing proceedings to adjust the abstract of judgment to conform with this court's

28

disposition after the remittitur issued—it is not true that "there was nothing for the [trial court] to do" and something was, in fact, remanded notwithstanding the lack of the word "remand" in this court's disposition. Third, Shah cites only *People v. Picklesimer* (2010) 48 Cal.4th 333 to support his position, but that case is inapposite. It concluded that a defendant seeking to challenge his mandatory sex offender registration status after he had appealed his conviction had to do so by writ of mandate in the trial court (not a freestanding postjudgment motion), by virtue of the rule generally precluding postjudgment motions in criminal cases. (*Id.* at p. 335.) Finally, as discussed above, sections 1202.4 and 1202.46 both expressly contemplate proceedings relating to restitution well after a conviction, and any related appeals. Hearings pursuant to section 186.11 are among them.

### III. Potential Further Proceedings

The Attorney General requests that the April 19, 2021 order be affirmed, but proposes that we remand the case for reconsideration of the order "in light of payment to victim Shirley Hwang and prospective payment to claimant Craig J. Bassett in Jay Shah's bankruptcy proceedings." For the avoidance of doubt, a party with appropriate standing may file a motion to reconsider in light of the bankruptcy proceedings if they wish. We lack sufficient information concerning the terms of orders in the bankruptcy proceedings to assess whether a motion for reconsideration might have merit.

### DISPOSITION

The April 19, 2021 order is affirmed.

_____
Markman, J.*

We concur:

_____
Stewart, P.J.

_____
Richman, J.

*People v. Shah* (A162676)

\* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                          San Francisco Superior Court

Trial Judge:                          Hon. Alexandra Gordon

Attorney for Defendant                By Appointment of the Court of Appeal
and Appellant:                        First District Appellate Project
                                      Edward A. Mahler

Attorneys for Claimants               Craig J. Bassett Pro Se
and Appellants:                       Law Offices of Craig J. Bassett

                                      Benjamin R. Levinson
                                      Law Offices of Benjamin R. Levinson

                                      Mark S. Goldrosen
                                      Law Office of Mark S. Goldrosen

                                      Jenny D. Smith
                                      Law Offices of Dek Ketchum

Attorneys for Plaintiff and           Rob Bonta
and Respondent:                       Attorney General of California

                                      Lance E. Winters
                                      Chief Assistant Attorney General

                                      Jeffrey M. Laurence
                                      Senior Assistant Attorney General

                                      Catherine A. Rivlin
                                      Supervising Deputy Attorney General

                                      Allen R. Crown
                                      Deputy Attorney General

31